ROBINSON, J.
Opinion **579 A jury found that, in the afternoon of June 30, 2009, the defendant, Kenny Holley, and his accomplice, Donele Taylor, invaded the East Hartford apartment of the victim, William Castillo, intending to commit a robbery. After the victim was shot fatally in the ensuing struggle, the defendant and Taylor fled by bus, taking cash and sneakers with them. The state *519 now **580 appeals, upon our grant of its petition for certification,[1] from the judgment of the Appellate Court reversing the judgment of the trial court, rendered in accordance with the jury's verdict, convicting the defendant of, inter alia, felony murder in violation of General Statutes § 53a-54c, home invasion in violation of General Statutes § 53a-100aa (a) (1), and robbery in the first degree in violation of General Statutes § 53a-134 (a) (2).[2] State v. Holley , 160 Conn. App. 578, 127 A.3d 221 (2015). On appeal, the state claims that the Appellate Court improperly concluded that the trial court had (1) violated the defendant's right to present a defense under the sixth amendment to the United States constitution by conditioning its ruling that certain out-of-court statements indicating that the victim had bitten Taylor were inadmissible under Crawford v. Washington , 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed. 2d 177 (2004), on the defendant not presenting evidence regarding the circumstances relating to that wound, (2) abused its discretion by admitting testimony from a police detective indicating that he had observed what appeared to be a bite mark on Taylor's hand, and (3) abused its **581 discretion by admitting testimony from a police detective narrating a surveillance video recorded on a bus and opining that the contours of an object in the defendant's backpack appeared to be a shoe box.
In addition to responding to the state's claims, the defendant asks us to consider, pursuant to Practice Book § 84-11 (a), numerous alternative grounds on which to affirm the judgment of the Appellate Court. In particular, the defendant contends that the trial court improperly (1) admitted into evidence, over his relevance objection, testimony by Kemorine Parker about a conversation she overheard between the defendant and Taylor while they were passengers on the bus shortly after the commission of the home invasion, (2) admitted into evidence, over his hearsay objection, certain testimony by Dennis Minott, the driver of the bus, indicating that Taylor had asked him for a tissue upon boarding, (3) determined that defense counsel had asked a question of a police detective that invited an answer otherwise barred by Crawford v. Washington , supra, 541 U.S. at 68, 124 S.Ct. 1354, and (4) denied the defendant's motion for a mistrial. Insofar as we agree with the state's claims and disagree with the defendant's proffered alternative grounds for affirmance, we reverse the judgment of the Appellate Court.
The Appellate Court's opinion aptly sets forth the following facts and procedural *520 history. On the basis of the evidence adduced at trial, the "jury reasonably could have found that, at the time of the events at issue, the victim ... lived in an apartment in East Hartford with his girlfriend, Tami Schultz. The victim earned money from selling sneakers both from his automobile and from his residence. At approximately 3:15 p.m. on June 30, 2009, while Schultz was out shopping, the defendant and ... Taylor entered the victim's residence. A violent struggle involving the victim ensued, during which both Taylor and the victim sustained physical injuries. **582 Notably, the victim bit Taylor on his right wrist. Before the defendant and Taylor left the victim's residence, which they [had] ransacked in search of valuables, the victim sustained multiple gunshot wounds.
"When the defendant and Taylor fled the victim's residence, the defendant was in possession of property belonging to the victim, specifically, cash and a shoe box. At 3:24 p.m., the victim attempted to dial 911 on his cell phone but he was unable to do so and dialed '922' instead. He perished on his kitchen floor from a gunshot wound in the area of his left chest. A neighbor of the victim, alerted to the sound of uncharacteristically loud music, fighting, gunshots, and pleas for help originating from the victim's residence, called 911 at 3:25 p.m. By 3:30 p.m., the police arrived at the scene, where they discovered the lifeless victim.
"Immediately upon leaving the victim's residence, the defendant and Taylor proceeded to a nearby bus stop that was one-tenth of a mile from the crime scene, from which, at 3:22 p.m., they boarded a bus that transported them to downtown Hartford. At this time, the defendant was carrying a backpack that contained the cash and a shoe box. [Upon boarding, Taylor asked Minott for a tissue.] A fellow passenger, [Parker, then overheard] Taylor comment to the defendant that Taylor had been bitten by a dog, and the defendant was overheard remarking that '[i]t was a big dog.' Images of the defendant and Taylor running toward the bus stop were captured by a video surveillance camera located at a nearby convenience store, and images of the defendant and Taylor while they were on the bus were captured by a video surveillance camera located on the bus. In the video from the bus, the defendant appears to remove cash from his backpack and appears to hand something to Taylor from his backpack.
"By disseminating to the public some of the still images of the defendant and Taylor from the surveillance **583 footage captured on the bus, the police gained information about their identities. When the police interviewed Taylor on July 16, 2009, police observed injuries on or about his hands. Following an unrelated shooting incident in Hartford, the police came to possess a .22 caliber Beretta and determined that it previously had been owned by Taylor. Forensic analysis of the gun and of shell casings found at the crime scene involving the victim linked the gun, and thus Taylor, to the crimes. Moreover, forensic analysis of DNA samples from Taylor and of DNA obtained from the brim of a baseball cap that was found at the crime scene linked Taylor to the crimes." State v. Holley , supra, 160 Conn. App. at 582-84, 127 A.3d 221.
The state subsequently charged the defendant with, inter alia, felony murder, home invasion, conspiracy to commit home invasion, burglary in the first degree, and robbery in the first degree. Id., at 582, 127 A.3d 221. The case was tried to a jury, which returned a verdict of guilty on all counts. Id. The court rendered a judgment of conviction in accordance with the jury's verdict, and imposed a total effective sentence of 105 years incarceration, with a *521 mandatory minimum sentence of twenty-five years incarceration.[3] Id., at 582, 127 A.3d 221 and n.1.
The defendant appealed from the judgment of conviction to the Appellate Court, raising numerous claims, including an unpreserved claim that his constitutional right to present a defense had been infringed by the trial court's conditional evidentiary ruling with respect **584 to Taylor's statement to the police about the injuries to his hand.[4] The Appellate Court agreed that the trial court had violated his right to present a defense because, "after the court properly excluded evidence concerning Taylor's statements to the police [pursuant to Crawford v. Washington , supra, 541 U.S. at 68, 124 S.Ct. 1354 ], it improperly restricted his right to challenge the evidence related to Taylor's wounds that it had permitted the state to introduce at trial." State v. Holley , supra, 160 Conn. App. at 607, 127 A.3d 221 ; see id., at 611-12, 127 A.3d 221. Although it determined that this impropriety required a new trial, the court also considered certain claims as presenting issues likely to arise on remand. Specifically, the Appellate Court determined that the trial court had abused its discretion by admitting lay opinion testimony by two police detectives, one stating that Taylor's wound was a bite, and the other describing an object in the defendant's backpack, based on the officer's observations of the video from the bus, as a shoe box. Id., at 621-22, 631-32, 127 A.3d 221. The Appellate Court rejected the defendant's claims, however, that the trial court improperly (1) concluded that Parker's testimony about the conversation on the bus between the defendant and Taylor about a dog bite was relevant evidence, and (2) permitted Minott to testify that one of the two men who had boarded the bus had asked him for a tissue. Id., at 625-26, 630-31, 127 A.3d 221. This certified appeal followed. Additional relevant facts and procedural history will be set forth in detail as necessary.
I
We begin with the state's claim that the Appellate Court improperly concluded that the trial court had violated the defendant's sixth amendment right to present **585 a defense by, in essence, precluding him from presenting evidence regarding the nature, source, and timing of Taylor's injuries. The record and the Appellate Court's opinion reveal the following additional facts and procedural history relevant to this claim. The defendant filed a motion in limine seeking to preclude the state from introducing certain statements that were made by Taylor to the police on the ground that they were inadmissible under Crawford ,[5] as testimonial hearsay *522 from an unavailable witness.[6] **586 State v. Holley , supra, 160 Conn. App. at 602-603, 127 A.3d 221. "In his memorandum of law in support of his motion in limine, the defendant went on to state in relevant part: 'On July 16, 2009 ... Taylor told Detectives [Donald] Olson and [Jeffrey] Cutler that [the victim] bit him during a struggle in [the victim's East Hartford] apartment .... At the time, [Taylor] was in the police department's interview room confessing to the murder of [the victim] in the presence of the two detectives. He signed a confession on that date accepting responsibility for the homicide while stating [that] he did not know what the other male was doing in the apartment at the time of the killing. In the signed confession he stated [that] '[during] the struggle with [the victim], I got a small cut on my left hand and [the victim] bit my right wrist.' He further informed [the] police on July 16, 2009, that he did not know the name of the other person that he was with in the apartment. In his confession, he stated that [the victim] unexpectedly drew a gun on him and the other person in the apartment, leading to a struggle involving Taylor and [the victim] and the eventual shooting by Taylor.... Four days later he contacted the police ... blaming [the defendant] for the shooting and taking the position that he ... was unaware that any homicide was going to take place.'
"On December 6, 2012, the court heard oral argument on the motion in limine.
*523 After the defendant's attorney described the facts, generally as set forth in his motion **587 and memorandum of law in support thereof, he argued that if Taylor did not testify, the court should exclude his statements from the evidence. The prosecutor responded that the state did not intend to offer all evidence of Taylor's statements to the police, characterizing them generally as 'statements against penal interest' that may be barred under Crawford. The prosecutor, however, stated that he intended to offer evidence that Taylor told the police that he had bite marks and scratches on his hands, including a bite mark inflicted by the victim. The prosecutor characterized this portion of Taylor's statements to the police as being nontestimonial in nature. The defendant's attorney argued that the evidence was unduly prejudicial and, because Taylor would not be available for cross-examination, its admission would violate the defendant's right to confront an adverse witness. It appears that the court deferred ruling on the issue until the time of trial.
"Following additional oral argument related to the issue on January 7, 2013, the court ruled that ... it would permit the state to present evidence of Taylor's statement to the police that he had sustained a bite wound. The state argued that the statement was relevant to one or more issues in the case in light of the evidence of the 'big dog' comments made by the defendant and Taylor on the bus, shortly after the shooting.
"On January 8, 2013, outside of the jury's presence, the state called Taylor to the witness stand. Despite being ordered to do so by the court, Taylor refused to answer any questions posed to him concerning the events underlying the trial. The court held Taylor in contempt and sentenced him to six months incarceration.
"On January 9, 2013, the court revisited its ruling to admit evidence of Taylor's statement that he had sustained a bite wound. At this juncture, the court disallowed **588 the statement related to the bite wound. The court stated: '[R]ight now, based on what the evidence is, because the defense hasn't challenged anything concerning that statement, I'm going to disallow the statement concerning the bite. I understand that it is a statement against penal interest; the entire confession was a statement against penal interest. But if there's even a hint anywhere that that bite was anything other than where it came from, that statement does come in, and that includes during closing argument as well. I will reopen this case if there's a hint during closing argument that the bite was anything other than what it is. So, remember, I'll stop the trial and allow [Taylor's statement] in at that point.' The court stated that it would permit Olson to testify that he had interviewed Taylor and that during the course of his interview he photographed Taylor's injuries. The court also stated that the state could present such photographs in evidence. Later, in response to an inquiry by the defendant's attorney concerning the court's ruling, the court stated that it wanted to make it 'very clear that if there's even a hint that that bite mark came from anywhere else, [then evidence of Taylor's statement] comes in.' The defendant's attorney replied, 'Right. And I made a note of that, opening the door.'
"Later, Olson testified that he interviewed Taylor on July 16, 2009, [and] observed injuries on Taylor's hands, and [that] the injuries [were photographed]. The photographs were admitted into evidence. During his testimony, Olson testified: 'He appeared to have a bite mark on his wrist and some lacerations on his other hand.' The defendant objected to Olson's testimony. The court, noting that the testimony *524 was Olson's observation of the injury, overruled the defendant's objection. During subsequent examination by the state, however, Olson testified that he learned from talking to Taylor that the injury on his wrist was '[a] bite.' The court sustained **589 the defendant's objection to this inquiry and denied the defendant's motion for a mistrial related to it. The court, however, provided the jury with a curative instruction directing it to disregard any testimony from Olson concerning what Taylor may have stated to him about the injury. The court instructed the jury that the nature of any marks on Taylor's hands was a factual matter for the jury to decide.[7]
"In addition to Olson's testimony and the photographs depicting Taylor's injuries, the state presented evidence that was relevant to the issue of Taylor's injuries from ... Minott, the operator of the bus on which the defendant and Taylor were passengers on June 30, 2009. Minott testified that one of the two black males who got on his bus at Main Street and Brewer Street asked him for 'a tissue,' [from which it could be inferred that Taylor needed to tend to a wound ] .... [T]he jury also heard evidence related to a bite injury from Parker, who described the conversation that she overheard on the bus." (Emphasis altered; footnotes added and omitted.) Id., at 602-606, 127 A.3d 221. At no point before or during the trial did the defendant indicate that there was evidence, **590 or the nature of any such evidence, to rebut the circumstantial evidence that Taylor had sustained a bite during the robbery and that the defendant had been with Taylor when he sustained that bite.
On appeal, the Appellate Court acknowledged that the defendant's constitutional challenge was unpreserved and reviewed it pursuant to the bypass rule of State v. Golding , 213 Conn. 233, 239-40, 567 A.2d 823 (1989).[8] See State v. Holley , supra, 160 Conn. App. at 608, 127 A.3d 221. The Appellate Court observed that the trial "court unmistakably conveyed in its ruling that any attempt by the defense to contest *525 the state's evidence that the injuries were the result of 'a bite' would open the door for the state to present evidence that the court had deemed inadmissible under Crawford. " Id., at 609, 127 A.3d 221. Considering the sixth amendment right to confrontation and to present a defense, as set forth in well established case law, which extends to closing arguments; see id., at 610-11, 127 A.3d 221 ; the Appellate Court concluded that the "defendant has demonstrated that a constitutional violation exists and deprived him of a fair trial. Rather than considering the admissibility of Taylor's statements to the police and the defendant's ability to challenge other evidence presented by the state related to Taylor's injuries as distinct matters, the [trial] court issued a ruling that joined the two matters and, in so doing, issued a ruling that effectively precluded the defendant from **591 making any effort to undermine the state's evidence that Taylor's injuries resulted from a bite. The [trial] court improperly left the defense in the untenable position of having to choose between a violation of the defendant's right to confrontation [under Crawford ] and a violation of the defendant's right to present a defense."[9] Id., at 611, 127 A.3d 221 ; see id., at 611-12, 127 A.3d 221 ("[t]he state has not presented this court with any authority that would permit a court to condition a defendant's right of confrontation on the defendant's not exercising his right to challenge the state's evidence"). The Appellate Court rejected the state's argument that the defendant's failure to make an offer of proof with respect to "what evidence he would have presented to the jury to counter the state's evidence concerning Taylor's injuries" precluded review of this claim.[10] See *526 id., at 612-13 n.13, 127 A.3d 221. **592 Observing that the state had not argued that any constitutional error was harmless, the Appellate Court concluded that the defendant was entitled to a new trial. Id., at 612-14, 127 A.3d 221.
On appeal to this court, the state claims that the Appellate Court improperly concluded that the trial court violated the defendant's right to present a defense by imposing a condition on its decision to preclude the statements to the police by Taylor that were otherwise barred under Crawford.[11] Specifically, the state first contends that the trial court's ruling did not preclude the defendant from introducing evidence with respect to the origin of Taylor's injuries, but merely suggested that such evidence would be subject to counterproof in the form of Taylor's statement about the bite, notwithstanding the court's determination that Taylor's statement was otherwise inadmissible under Crawford. Relying on, inter alia, State v. Crespo , 303 Conn. 589, 35 A.3d 243 (2012), the state further argues that any violation of the defendant's right to present a defense is purely "speculative" or "hypothetical," insofar as the defendant's failure to make an offer of proof in response to the trial court's ruling rendered it impossible for him to demonstrate on appeal the adverse effect of the trial court's ruling on his right to present defense.
**593 In response, the defendant contends that the Appellate Court properly determined that the trial court's preclusion of evidence about the nature of Taylor's injuries, under penalty of the admission of statements otherwise barred under Crawford , deprived him of a meaningful defense. The defendant argues that "[e]vidence of the source, nature, and timing of Taylor's injuries was relevant to refute the testimony of Olson, Parker, and Minott," insofar as it would have allowed the defendant to refute the prosecutor's argument, based on circumstantial evidence, that the defendant and Taylor had been present in the apartment together. The defendant further argues that the trial court's ruling and the resulting harm were clear from the record, and amounted to "implicitly instruct[ing] the defense to not challenge the nature, source, or timing of Taylor's injuries, while warn[ing] the defense of the consequences of doing so." We agree with the state, however, and conclude that the defendant has failed to establish that the trial court's ruling deprived him of the right to present a defense.
"It is fundamental that the defendant's rights to confront the witnesses against him and to present a defense are guaranteed by the sixth amendment to the United States constitution.... A defendant's right to present a defense is rooted in the compulsory process and confrontation clauses of the sixth amendment .... Furthermore, the sixth amendment rights to confrontation and to compulsory process are made applicable to state prosecutions through the due process clause of the fourteenth amendment....
"In plain terms, the defendant's right to present a defense is the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies.... It guarantees the right to offer the testimony of witnesses, and to compel their attendance, if necessary .... Therefore, **594 exclusion of evidence offered by the defense *527 may result in the denial of the defendant's right to present a defense." (Citations omitted; internal quotation marks omitted.) State v. Wright , 320 Conn. 781, 816-17, 135 A.3d 1 (2016).
"Although it is within the trial court's discretion to determine the extent of cross-examination and the admissibility of evidence, the preclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements [of the confrontation clause] of the sixth amendment....
"These sixth amendment rights, although substantial, do not suspend the rules of evidence .... A court is not required to admit all evidence presented by a defendant; nor is a court required to allow a defendant to engage in unrestricted cross-examination.... Instead, [a] defendant is ... bound by the rules of evidence in presenting a defense .... Nevertheless, exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights .... Thus, [i]f the proffered evidence is not relevant [or constitutes inadmissible hearsay], the defendant's right[s] to confrontation [and to present a defense are] not affected, and the evidence was properly excluded." (Citations omitted; internal quotation marks omitted.) Id., at 818-19, 135 A.3d 1 ; see also State v. Fay , 326 Conn. 742, 754 n.12, 167 A.3d 897 (2017) ("the right to present a defense, though deeply rooted, rests on somewhat indeterminate grounds-at times, its existence has been attributed to the fourteenth amendment and at times to various clauses of the sixth amendment").
Because the defendant did not raise this claim at trial, we review it under the framework of State v. Golding , supra, 213 Conn. at 239-40, 567 A.2d 823 ; see footnote 8 of this opinion; which is "a narrow exception to the general rule that an appellate court will not entertain a claim that has **595 not been raised in the trial court." State v. Brunetti , 279 Conn. 39, 55, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S.Ct. 1328, 167 L.Ed.2d 85 (2007). It is important to underscore that Golding permits the defendant to raise an unpreserved constitutional claim on appeal, and the appellate tribunal to review it, "only if the trial court record is adequate for appellate review. The reason for this requirement demands no great elaboration: in the absence of a sufficient record, there is no way to know whether a violation of constitutional magnitude in fact has occurred. Thus, as we stated in Golding , we will not address an unpreserved constitutional claim [i]f the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred ...." (Emphasis added; footnotes omitted; internal quotation marks omitted.) Id., at 55-56, 901 A.2d 1 ; see also State v. Medina , 228 Conn. 281, 300-302, 636 A.2d 351 (1994). Although the defendant's claim in the present case is constitutional in nature, satisfying Golding 's second prong, the state of the record renders the defendant unable to satisfy the first or third prongs of Golding , namely, the record is alternately inadequate for review, or even if deemed adequate for review, does not demonstrate the existence of a constitutional violation.
Because Golding does not excuse an inadequate record, the absence or inadequacy of an offer of proof[12] **596 may *528 prevent a criminal defendant from proving on appeal that the trial court's preclusion of certain evidence violated his right to present a defense. In State v. Wright , 322 Conn. 270, 272, 140 A.3d 939 (2016), we recently considered whether the trial court's limitation of a defendant's cross-examination of police witnesses violated his right to present a defense, namely, his theory that the police investigation was inadequate. In that case, we concluded that we did not need to consider whether the Appellate Court had properly determined that "the trial court's limitation on cross-examination was of constitutional dimension because it precluded the defendant from placing the police officers' investigation into a meaningful context for purposes of the defendant's inadequate investigation defense."[13] Id., at 281, 140 A.3d 939. This was because our review of the record demonstrated that "neither the defendant's proposed questions nor his offer of proof established the basis for a claim that the police, in not pursuing certain avenues of investigation, had failed to act in accordance with past established practices or standard police investigative procedures," meaning that the defendant could not "establish that the trial court improperly precluded him from advancing an inadequate investigation defense on this basis." Id., at 281-82, 140 A.3d 939. Citing State v. Brunetti , supra, 279 Conn. at 63, 901 A.2d 1, we emphasized that the defendant's questions failed to satisfy his "duty to put the trial court on notice of his defense theory and to ensure that evidence to support that theory is placed on the record for appellate review." State v. Wright , supra, 322 Conn. at 290, 140 A.3d 939 ; see also id., at 290-91, 140 A.3d 939 ("Stated simply, the record does not reflect that the defendant expressed an intention to **597 qualify any of the testifying officers as experts and to inquire about standard operating procedures or routine practices that had not been followed in the investigation at hand. Nor does the record establish such facts. The defendant's claim that the trial court improperly precluded his inadequate investigation defense strategy as to such a line of inquiry therefore necessarily fails.").
Similarly, in State v. Crespo , supra, 303 Conn. at 611-12, 35 A.3d 243, upon which the state relies heavily, we rejected a defendant's unpreserved claim, raised under Golding , that the trial court had violated his rights to confrontation and to present a defense by precluding him from questioning the victim about specific sexual acts in which she had engaged in the past, insofar as she had claimed that she was a virgin when the defendant sexually assaulted her. Beyond noting that the trial court had allowed the defendant to undertake a comprehensive cross-examination of the victim, including discussing her past engagement, relationships, and sexual history, we observed that the defendant's "failure to *529 raise this ground of relevance prevented the trial court from ruling on its admissibility on that ground," complicating the constitutional inquiry because "[a] clear statement of the defendant's theory of relevance is all important in determining whether the evidence is offered for a permissible purpose." (Internal quotation marks omitted.) Id., at 612-13, 35 A.3d 243 ; see also State v. Fay , supra, 326 Conn. at 771-72, 167 A.3d 897 ("Because the defendant provided no other evidence demonstrating that the victim's psychiatric records were necessary to his defense, he cannot make the required preliminary showing, without improperly supplementing the record on appeal, that he was entitled to an in camera review of those records. Accordingly, the defendant is not entitled to review of his unpreserved claim that the trial court's failure to conduct an in camera review of the records deprived him of his right to present a defense."); cf. **598 State v. Roger B. , 297 Conn. 607, 615, 999 A.2d 752 (2010) (declining to review claim that delay in seeking arrest warrant deprived defendant of due process rights because record "simply does not contain a sufficient underlying set of facts for [the court] to assess whether the defendant suffered actual prejudice as a result of [the] delay in seeking an arrest warrant"); State v. Moye , 214 Conn. 89, 97-99, 570 A.2d 209 (1990) (rejecting unpreserved confrontation clause claim raised under Golding , with respect to preclusion of questioning of victim about her arrest and detention, on ground of inadequate record because "[a] defendant cannot claim a confrontation clause violation regarding an issue on which he chose not to cross-examine the witness"); State v. Banks , 117 Conn. App. 102, 110-11, 978 A.2d 519 (rejecting unpreserved confrontation clause claim because there "was no specific ruling" on whether defense counsel could question witness regarding certain "pending [criminal] charges to show motive, interest or bias," and concluding that claim therefore "fail[ed] under the third prong of Golding "), cert. denied, 294 Conn. 905, 982 A.2d 1081 (2009).
The conditional nature of the trial court's ruling in the present case, allowing counterproof in the form statements otherwise barred under Crawford if the defendant were to challenge the provenance of Taylor's injuries as bites, does not relieve the defendant of the need to make a record demonstrating the existence of harm to his right to present a defense. In reaching this conclusion, we find particularly instructive the decision by the United States Court of Appeals for the Seventh Circuit in United States v. Wilson , 307 F.3d 596 (7th Cir. 2002). In that case, the defendant, Robert Wilson, claimed that his fifth amendment right to remain silent was violated by a district court's conditional ruling allowing the admission of evidence of selective silence during his interview with an agent from the Federal **599 Bureau of Investigation, if Wilson used evidence from that interview in support of his alibi defense. Id., at 598-600. In rejecting this claim, the Seventh Circuit relied on Luce v. United States , 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). In that case, the United States Supreme Court declined to review a criminal defendant's challenge to a trial court's ruling on his motion in limine seeking to preclude impeachment by prior conviction because the defendant's ultimate failure to testify deprived the reviewing court of "a complete record detailing the nature of petitioner's testimony, the scope of the cross-examination, and the possible impact of the impeachment on the jury's verdict," thus rendering any possible harm flowing from the ruling "wholly speculative." *530 [14] Id., at 41, 105 S.Ct. 460. The Seventh Circuit **600 observed that "Wilson was given a choice by the district court. This choice, he argues, put him on the horns of a dilemma: he could either explore the issue of his alleged associate, at the price of having the jury hear about his invocation of his right to silence, or he *531 could say nothing about the associate and keep out the testimony about the selective silence. At the trial, Wilson resolved the problem by declining to introduce the part of his [postarrest] statement that related to an associate; thus, the government never introduced the other part **601 of the statement in which Wilson declined to name the associate." United States v. Wilson , supra, at 599-600. The Seventh Circuit deemed it "inappropriate ... to review Wilson's claim on the merits .... He exercised his constitutional right to refrain from introducing certain evidence at the trial and cannot now attack a potential introduction of evidence by the government in response to his potential testimony. We therefore do not address his arguments with respect to the alleged violation of his [f]ifth [a]mendment rights." Id., at 600-601.
Having reviewed the record in the present case, we agree with the state that the defendant's claim fails under the first and third prongs of State v. Golding , supra, 213 Conn. at 239-40, 567 A.2d 823, because the record does not demonstrate the existence of the violation of his right to present a defense. There is no indication in the record as to the substance of any evidence that the defendant would have proffered but for the conditional ruling on his motion in limine-whether the defendant would have sought to prove that Taylor had been bitten by a person other than the victim or by an animal, that Taylor's wound was caused by something other than a bite, that Taylor's wound had been sustained before the crime occurred, or that Taylor had sustained no wound at all. There is no indication whether the source of this evidence would have been documentary or testimonial, and, if the latter, whether through an expert, the defendant, or another lay witness.
Thus, notwithstanding the unpreserved nature of this claim, the defendant's failure to make an offer of proof at trial renders it impossible for us to determine whether he was deprived of his right to present a defense because the record does not disclose the evidence that he would have offered to rebut the inference that Taylor had been bitten by the victim. Put differently, with no indication in the record that the defendant was prepared to offer admissible evidence in support of the theory **602 that Taylor's injuries were not caused by the victim, the defendant cannot prove that the trial court's ruling violated his right to present a defense. See, e.g., State v. Wright , supra, 320 Conn. at 818-19, 135 A.3d 1 ; see also State v. O'Brien-Veader , 318 Conn. 514, 563-64, 122 A.3d 555 (2015) (failure to establish that evidentiary ruling was improper meant that defendant could not satisfy third prong of Golding with respect to claim of confrontation clause violation).
Moreover, the trial court's ruling was not an absolute bar to the admission of evidence pertaining to Taylor's injuries. Rather, it warned the defendant that if he introduced such evidence, the trial court would admit into evidence statements by Taylor that were otherwise barred under Crawford , if subsequently offered by the state. To be sure, the trial court's conditional ruling left the defendant with a strategic choice, one that required him to balance the benefits of attacking the provenance of Taylor's injuries with the risks of the admission of Taylor's statement that the victim had bitten him, evidence that otherwise would be barred by Crawford. This dilemma did not necessarily deprive the defendant of his right to present a defense because "[t]he criminal process ... like the rest of the legal system, is replete with situations requiring the making of difficult judgments as to which course to follow." (Internal quotation *532 marks omitted.) McGautha v. California , 402 U.S. 183, 213, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), vacated in part on other grounds sub nom. Crampton v. Ohio , 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972) ; see also, e.g., United States v. Valenti , 60 F.3d 941, 945 (2d Cir. 1995) ("one of the risks any criminal defendant must run is the difficult choice on whether the value of his anticipated evidence would outweigh whatever damaging rebuttal evidence the government might produce" [internal quotation marks omitted] ); State v. Moye , supra, 214 Conn. at 99, 570 A.2d 209 ("[w]hen a party chooses **603 not to cross-examine a witness in order to avoid the possibility of eliciting harmful testimony, his right to confront and cross-examine that witness as guaranteed by the sixth and fourteenth amendments of the United States constitution is in no way abridged" [internal quotation marks omitted] ); State v. Fisher , 52 Conn. App. 825, 828-30, 729 A.2d 229 (The court rejected a criminal defendant's unpreserved claim, raised under Golding , that the denial of a motion in limine deprived him of the right to testify and the right to a fair trial because, "[a]fter hearing the state's offer of proof on the prior misconduct evidence and the trial court's ruling, the defendant and his attorney made a tactical decision to withdraw the alibi defense to prevent the admission of evidence that could have weighed heavily in the jurors' minds, despite limiting instructions by the court on its purpose. The defendant cannot now complain that he was deprived of his constitutional rights because his trial tactic failed."), cert. denied, 249 Conn. 912, 733 A.2d 232 (1999).
Indeed, given the conditional nature of the trial court's ruling, we do not know whether, in the subsequent trial proceedings, the state would have used Taylor's potentially inadmissible statements. It is not inconceivable that, even if the defendant had introduced evidence concerning Taylor's injuries, the state might well have decided to avoid handing the defendant a potentially strong appellate issue founded on his objection to Taylor's statement under Crawford. See Luce v. United States , supra, 469 U.S. at 42, 105 S.Ct. 460 ("[i]f, for example, the [g]overnment's case is strong, and the defendant is subject to impeachment by other means, a prosecutor might elect not to use an arguably inadmissible prior conviction"); United States v. Monell , 801 F.3d 34, 49 (1st Cir. 2015) ("the government might have elected not to risk a reversible appellate issue, and ultimately might have decided not to introduce the prison recording"), **604 cert. denied, --- U.S. ----, 136 S.Ct. 864, 193 L.Ed.2d 761 (2016) ; Bailey v. United States , 699 A.2d 392, 401-402 (D.C. 1997) (declining to review in limine ruling allowing prior misconduct evidence in event sexual assault defendant raised consent defense because given subsequent developments in testimony, "the prosecutor might well have decided not to introduce into the record material which would bring with it a potentially thorny appellate issue, and which would thus have created the danger that a conviction would be reversed on appeal"). This disincentive for the state to introduce the challenged Crawford material, any objection to which the trial court might well have sustained when ultimately offered, renders any violation of the defendant's right to present a defense even more speculative. Accordingly, we conclude that the Appellate Court improperly ordered a new trial on the basis of its determination that the trial court's conditional ruling violated the defendant's right to present a defense.
II
We turn next to the state's evidentiary claims, namely, that the Appellate Court *533 improperly determined that the trial court had abused its discretion in admitting certain lay opinion testimony from two police officers, namely, (1) Olson's testimony that he had observed a bite mark on Taylor's hand, and (2) testimony by Jason Smola, the police detective who narrated the presentation of the bus surveillance video, indicating that an object in the defendant's backpack appeared to be a shoe box. We conclude that the trial court did not abuse its discretion as to the first matter, and that its ruling as to the second matter would be harmless even if it were an abuse of discretion.
Our consideration of these claims is informed by the following general principles concerning lay opinion testimony. Section 7-1 of the Connecticut Code of Evidence **605 provides: "If a witness is not testifying as an expert, the witness may not testify in the form of an opinion, unless the opinion is rationally based on the perception of the witness and is helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." " Section 7-1 is based on the traditional rule that witnesses who did not testify as experts generally were required to limit their testimony to an account of the facts and, with but a few exceptions, could not state an opinion or conclusion.... Section 7-1 attempts to preserve the common-law preference for testimony of facts, but recognizes there may be situations in which opinion testimony will be more helpful to the fact finder than a rendition of the observed facts." (Citations omitted.) Conn. Code Evid. § 7-1, commentary. "In some situations, a witness may not be able to convey sufficiently his or her sensory impressions to the fact finder by a mere report of the facts upon which those impressions were based. For example, a witness' testimony that a person appeared to be frightened or nervous would be much more likely to evoke a vivid impression in the fact finder's mind than a lengthy description of that person's outward manifestations.... As a matter of practical necessity, this type of nonexpert opinion testimony may be admitted because the facts upon which the witness' opinion is based are so numerous or so complicated as to be incapable of separation, or so evanescent in character [that] they cannot be fully recollected or detailed, or described, or reproduced so as to give the trier the impression they gave the witness ...." (Citation omitted; internal quotation marks omitted.) Conn. Code Evid. § 7-1, commentary.
"Because of the wide range of matters on which lay witnesses are permitted to give their opinion, the admissibility of such evidence rests in the sound discretion of the trial court, and the exercise of that discretion, **606 unless abused, will not constitute reversible error." (Internal quotation marks omitted.) State v. Finan , 275 Conn. 60, 65-66, 881 A.2d 187 (2005). Under the abuse of discretion standard, "[w]e will make every reasonable presumption in favor of upholding the trial court's ruling ...." (Internal quotation marks omitted.) State v. Grant , 286 Conn. 499, 532, 944 A.2d 947, cert. denied, 555 U.S. 916, 129 S.Ct. 271, 172 L.Ed.2d 200 (2008).
A
We begin with the state's bite mark claim. The record and Appellate Court opinion reveal the following additional relevant facts and procedural history. At trial, Olson testified that he interviewed Taylor on July 16, 2009, and directed Officer Woodrow Tinsley to take photographs of the injuries to Taylor's hands.[15] The state then asked Olson, *534 "[w]hat was the nature of the injuries?" Olson began to respond to that question by stating that Taylor "had a bite on his wrist," but was interrupted by an objection from defense counsel. "The court, noting that the testimony was Olson's observation of the injury, overruled [that] objection." State v. Holley , supra, 160 Conn. App. at 606, 127 A.3d 221. Olson then completed his statement, testifying that Taylor "appeared to have a bite mark on his wrist and some lacerations on his other hand." Following that statement, the state introduced into evidence, without objection, the photographs of Taylor's injuries taken on July 16, 2009. **607 The Appellate Court concluded that the trial court improperly admitted Olson's testimony under § 7-1 of the Connecticut Code of Evidence because he "was not testifying as an expert witness with any type of training or experience related to the recognition of bite marks.... By replying ... that Taylor appeared to have 'a bite mark on his wrist,' Olson did not merely describe what he had observed in terms of the physical appearance of the skin on Taylor's wrist. Instead, by describing the injury as 'a bite mark,' he unquestionably expressed his opinion that Taylor had been bitten without establishing the necessary expertise or qualifications." State v. Holley , supra, 160 Conn. App. at 621, 127 A.3d 221. Ultimately, the Appellate Court concluded that it is not "proper for a lay witness to describe observed injuries in such a manner that suggests the origin of them." Id., at 622, 127 A.3d 221.
On appeal, the state claims that the Appellate Court improperly determined that Olson's testimony was an improper lay opinion under § 7-1 of the Connecticut Code of Evidence. Relying on the rule's text and commentary, the state contends that, on the basis of the various matters upon which nonexpert opinion testimony has been held admissible, including the physical and mental condition of another person, it is entirely proper for a trial court to admit testimony that a witness had observed what he or she perceived to be a bite mark. The state further claims that Olson's observation was one that he or any other person could derive from their common experiences in life and that no expertise was required.[16]
In response, the defendant claims that the Appellate Court correctly determined that Olson's testimony violated the limitation on lay opinion testimony under § 7- **608 1 of the Connecticut of Code of Evidence. Relying upon State v. Ingram , 132 Conn. App. 385, 31 A.3d 835 (2011), cert. denied, 303 Conn. 932, 36 A.3d 694 (2012), the defendant contends that Olson's testimony was inadmissible because it was in the nature of expert testimony and (1) no evidence established that Olson was medically qualified to testify about the bite mark, (2) it was the jury's function to determine whether Taylor's injuries were bite marks, and (3) this court will see that *535 the photographic exhibits, when viewed directly, do not depict bite marks. The defendant further claims that the trial court improperly concluded that Olson's testimony was based on his personal observation, because Olson did not describe what he had observed, but rather, expressed his opinion that Taylor had been bitten. Finally, the defendant contends that Olson's testimony was not helpful to the jurors, as the photographic exhibits were fair and accurate representations of Taylor's injuries, from which the jury could have determined the nature and source of the injuries. We, however, agree with the state and conclude that the Appellate Court improperly determined that the trial court had abused its discretion by admitting into evidence Olson's testimony that Taylor's injuries appeared to be bite marks.
In determining whether the trial court abused its discretion in deeming Olson's testimony to be permissible lay opinion; see, e.g., State v. Finan , supra, 275 Conn. at 65-66, 881 A.2d 187 ; we note that the governing rule of evidence requires that the lay opinion testimony (1) must be rationally based on the perception of the witness and (2) helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue. Conn. Code Evid. § 7-1. Indeed, the commentary to the rule cites as illustrative "matters upon which nonexpert opinion testimony has been held admissible include: the market value of property where the witness is the **609 owner of the property ... the appearance of persons or things ... sound ... the speed of an automobile ... and physical or mental condition." (Citations omitted; emphasis added.) Conn. Code Evid. § 7-1, commentary.
With respect to opinion evidence concerning the appearance of persons or things, we find instructive State v. Grant , supra, 286 Conn. 499, 944 A.2d 947, in which we considered whether a lay person could testify about whether a substance observed by that person appeared to be blood. We determined that "[a] person of ordinary knowledge and experience generally is competent to testify that a substance personally observed by that person appeared to be blood. Although the particular facts and circumstances surrounding the witness' observation of the substance might affect the weight to be given to the testimony, the fact that the substance was not subject to scientific testing to rule out any possibility that it was not blood does not render the testimony inadmissible." Id., at 535, 944 A.2d 947 ; see also Jewett v. Jewett , 265 Conn. 669, 680, 830 A.2d 193 (2003) ("[t]he fact that evidence is susceptible of different explanations or would support various inferences does not affect its admissibility, although it obviously bears upon its weight" [internal quotation marks omitted] ). In reaching this conclusion, this court relied on State v. Schaffer , 168 Conn. 309, 362 A.2d 893 (1975), in which we determined that "[i]t is permissible to admit into evidence the opinions of common observers in regard to common appearances, facts and conditions ... in a great variety of cases.... When the question involved can be answered by the application of ordinary knowledge and experience, expert testimony is not required ... although [t]o render opinions of common witnesses admissible it is indispensable that the opinions be founded on their own personal observation, and not [on] the testimony of others, or on any hypothetical **610 statement of facts, as is permitted in the case of experts." (Citations omitted; internal quotation marks omitted.) Id., at 318-19, 362 A.2d 893 ; see id., at 319, 362 A.2d 893 ("[c]onsidering the substance identified, its location, and the normal human experience of the witness ... the trial court did not abuse its discretion in determining that under the circumstances the *536 [lay] witness was competent to give testimony characterizing as blood the stain she observed on the window of the defendant's car").
We conclude that it was within the trial court's broad discretion to determine that Olson, as a lay witness, was competent to testify regarding the appearance of wounds that he had observed. Indeed, it was well within the trial court's discretion to determine that Olson's testimony that Taylor's wounds appeared to be a bite mark, based on Olson's personal observation and rational perception of Taylor's injuries, was more beneficial to the jury than a more abstract recitation or description of the size, location, and shape of the wound. See Conn. Code Evid. § 7-1, commentary; see also Turner v. State , Docket No. 1495, 2016 WL 3220541, *6 (Md. Spec. App. June 10, 2016) (police detective had properly offered "his opinion as to what the mark on [the] appellant's hand appeared to be" because he "had [firsthand] knowledge of the mark, having viewed it in person and, as a law enforcement officer, his opinion testimony was helpful to the jury as [the detective] may have encountered more bite marks and wounds than the average juror," and emphasizing that detective's "testimony was not admitted into evidence as expert testimony based on his specialized training or knowledge" and that "[h]e did not testify that the mark was made by the victim, or that there were bite patterns from which it could be concluded that they were inflicted by the victim"); Mitchell v. State , 270 P.3d 160, 179 (Okla. Crim. App. 2011) (lay fact witness could testify to "his observations and opinions based on those observations"
**611 with respect to description of victim's injuries as "bite marks"); cf. State v. Neal , 34 Kan. App. 2d 485, 494, 120 P.3d 366 (2005) (The court concluded that a lay witness "was competent to testify that she had an overbite as a result of not wearing a retainer. Furthermore, it was reasonable for her during rebuttal to provide her opinion regarding the comparison of the bite marks in the photographs with her own bite, which she had observed on previous occasions."), review denied, Kansas Supreme Court, Docket No. 04-92522-A (February 14, 2006). Put differently, Olson's testimony regarding the appearance of Taylor's wounds stands in contrast to bite mark evidence that is the proper subject of expert testimony, such as the identification of the origin of a bite mark. See, e.g., State v. Ortiz , 198 Conn. 220, 227-28, 502 A.2d 400 (1985) (bite mark identification is proper subject of expert testimony).
The Appellate Court's decision in State v. Ingram , supra, 132 Conn. App. 385, 31 A.3d 835, upon which the defendant relies, is not to the contrary. In that case, three witnesses, a police officer with training in dog handling, a police officer with emergency medical training, and a board certified physician's assistant, testified that the defendant had an injury that appeared to be a dog bite. Id., at 400-401, 31 A.3d 835. The dog handler, in particular, testified that he had commanded his dog to locate and bite the perpetrator of a robbery and that the dog had done so as commanded. Id., at 389, 31 A.3d 835. The defendant challenged the admission of evidence regarding his injury provided by the three witnesses, claiming that, because they were not qualified as scientific or medical experts in dog bite identification, the trial court improperly admitted their testimony under § 7-2 of the Connecticut Code of Evidence, which governs the admission of expert testimony.[17] Id., at 400, 31 A.3d 835.
*537 The Appellate Court determined that **612 the trial court did not abuse its discretion in admitting the expert testimony because all three witnesses had relevant training and experience relating to their testimony, and that the court reasonably could have determined that their testimony was not within the common knowledge of the jury and therefore would be helpful to the jury in considering the issues. Id., at 402, 31 A.3d 835. In our view, Ingram is inapposite to the present case because the three witnesses in that case testified as to the source or nature of the bite, and went beyond the scope of Olson's testimony in this case, which was based on his firsthand perception and was not admitted into evidence on the basis of any specialized training or knowledge.
Finally, having accepted the defendant's invitation to view the photographic exhibits ourselves, we believe that the trial court reasonably could have determined that Olson's description of Taylor's injuries as apparent bite marks was within the realm of reason. Accordingly, we conclude that the Appellate Court improperly determined that the trial court had abused its discretion in determining that Olson's testimony was permissible lay opinion evidence.
B
We turn next to the state's claim that the Appellate Court improperly determined that the trial court had abused its discretion by admitting Smola's testimony regarding the object that had been inside of the defendant's backpack on the bus. The record and Appellate Court opinion reveal the following relevant facts and procedural history. The defendant filed a motion in limine seeking to preclude Smola from testifying that the item in the defendant's backpack, as viewed on the **613 bus surveillance video, was a shoe box. The trial court denied the motion and ruled that it would permit Smola to testify "as to what it looks like. This is not [an] expert opinion." Before Smola testified and narrated portions of the bus surveillance video as it played for the jury, the defendant again objected, arguing that the contents of the backpack in the bus surveillance video presented a question of fact for the jury to determine. The trial court overruled the objection, stating that lay opinion evidence is admissible if it is relevant and comes from a competent witness. The trial court then instructed the jury that, "during this testimony there's going to be the introduction of a video.... What's in the video is for you to determine. You obviously are the ultimate arbiters of what the facts are in the case, and the testimony is offered as assistance but it's for you to determine. You can reject all, part, or none of the testimony if you wish, but you determine what it is that you see in that." The court then reminded the jury, that "once again, the narration is an aid but it's for you to determine what's actually in that video."
After Smola began testifying, the state asked Smola to narrate the events depicted in the bus surveillance video as it was played for the jury. He testified, over objection, that it was his "belief through investigation [that] it was a sneaker box" visible inside the backpack. The court then instructed the jury: "But once again ... the narrative that [was] provided, you determine what the facts are in the case." On cross-examination, Smola conceded that he did not know whether the item in the *538 backpack actually was a shoe box, as that item was never recovered.
In its analysis of the defendant's claim that the trial court improperly permitted Smola to testify that the visible contours of an object in the backpack was a shoe box, the Appellate Court emphasized that the state did not present Smola as an expert witness, and Smola **614 had no firsthand knowledge of the item in the backpack. State v. Holley , supra, 160 Conn. App. at 635, 127 A.3d 221. The Appellate Court then stated that it was unaware of any case law "under which a lay witness who lacks firsthand knowledge of matters in evidence may render his or her opinion as to such matters by presenting his interpretation of the evidence to the jury." Id., at 635-36, 127 A.3d 221. Ultimately, the Appellate Court "conclude[d] that it was improper for the court to have permitted Smola to offer a lay opinion with regard to the contents of the backpack depicted in the bus video." Id., at 636-37, 127 A.3d 221.
On appeal, the state claims that it was within the trial court's discretion to permit a witness, who was narrating portions of the bus surveillance video as it was played for the jury, to refer to identifiable objects visible on the screen. The state argues that the commentary to § 7-1 of the Connecticut Code of Evidence expressly contemplates that a lay witness may testify to the appearance of persons or things, which extends to the identity or similarity of objects. Finally, the state contends that any error was harmless because the trial court instructed the jury about its responsibility to determine what the surveillance bus video depicted, and that it could reject Smola's testimony accordingly. In response, the defendant contends that the Appellate Court properly determined that the trial court had abused its discretion in admitting the challenged testimony because Smola lacked personal knowledge and, thus, was not competent to testify about these facts. We, however, agree with the state and conclude that any impropriety in the admission of Smola's description of the item inside of the backpack was harmless error.
Although there is some division in the federal and state courts on this point, there is significant authority under rule 701 of the Federal Rules of Evidence to support the proposition that a lay witness narrating a video to a jury may state his or her impressions of what **615 is depicted in the video, even if he or she did not observe those events firsthand. See, e.g., United States v. Begay , 42 F.3d 486, 502-503 (9th Cir. 1994), cert. denied sub nom. MacDonald v. United States , 516 U.S. 826, 116 S.Ct. 93, 133 L.Ed.2d 49 (1995).[18] Nonetheless, *539 we need **616 not consider whether the Appellate Court properly determined that Smola's narration of the bus surveillance video was not based on his personal observations for purposes of § 7-1 of the Connecticut Code of Evidence, insofar as he did not witness the events on the bus firsthand. See State v. Holley , supra, 160 Conn. App. at 635-36, 127 A.3d 221. Even if we assume, without deciding, that the trial court improperly allowed Smola to testify that he perceived the object to be a shoe box, we believe that any error in that regard was harmless and, therefore, does not require reversal.[19]
It is well settled that, "[w]hen an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful.... [W]hether [an improper ruling] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength **617 of the prosecution's case.... Most importantly, we must examine the impact of the ... evidence on the trier of fact and the result of the trial.... [T]he proper standard for determining whether an erroneous evidentiary ruling is *540 harmless should be whether the jury's verdict was substantially swayed by the error.... Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) State v. Bouknight , 323 Conn. 620, 626-27, 149 A.3d 975 (2016).
Although we acknowledge that Smola's description of the object in the defendant's backpack as a shoe box was probative evidence connecting the defendant to the scene of the crime, we nevertheless have the requisite fair assurance that this testimony did not substantially affect the jury's verdict. First, Taylor was linked to the crime through DNA evidence, the injuries to his hands, and his sale of the murder weapon. The defendant's link to Taylor in the immediate aftermath of the crime was established through the surveillance video from the convenience store, which showed the two men traveling together within mere minutes of the crime, the bus surveillance video, and other evidence, such as Parker's testimony about the conversation between the defendant and Taylor on the bus, which clearly evidenced that the two men were together when Taylor was bitten.
Second, the bus surveillance video was admitted into evidence, and the jury had the opportunity to view it, along with a still image captured from the video depicting the backpack partially open to reveal a grayish white object. See State v. Edwards , 325 Conn. 97, 134, 156 A.3d 506 (2017) (improper admission of detective's testimony about cell tower coverage, without qualification as expert, was harmless because, even without his "testimony, the jury still could conclude from the cell **618 phone records themselves that the defendant's cell phone accessed cell towers in Rocky Hill and Wethersfield on the date of the robbery, which coincides with the victim's testimony that she was followed from the grocery store in Rocky Hill and robbed at her home in Wethersfield"); see also Callaway v. State , Docket No. 2376, 2016 WL 7379300, *13 (Md. Spec. App. December 20, 2016) (any error in admitting testimony of detective who narrated video of event he had not watched was harmless because jurors were "free to view the video for themselves, as the parties reminded them during closing arguments").
Significantly, the trial court instructed the jury that Smola's testimony was "offered as assistance," but that the jury remained "the ultimate arbiters of what the facts are in the case," and it was free to "reject all, part, or none of the testimony if you wish, but you determine what it is that you see in that" video. The trial court reiterated this instruction during the final charge, as well.[20] We presume the jury followed these instructions, particularly because the instructions were given immediately before Smola testified, and "such instructions are far more effective in mitigating the harm of potentially improper evidence when delivered contemporaneously with the admission of that evidence, and addressed specifically thereto." (Internal quotation marks omitted.) State v. Paul B. , 315 Conn. 19, 32, 105 A.3d 130 (2014).
Finally, Smola was subject to extensive cross-examination, in which he acknowledged that he had never physically obtained or examined the object in the backpack *541 **619 that appeared in the video to be a shoe box. Smola also acknowledged during cross-examination that he could not tell from the video whether the item in the backpack bore any logos, brands, or other distinctive marks like the shoe box that was recovered from the victim's apartment, which was admitted into evidence as Defendant's Exhibit E1. See State v. Edwards , supra, 325 Conn. at 134-35, 156 A.3d 506 (improper admission of testimony without qualifying detective as expert in cell tower data was harmless error because, inter alia, "defense counsel rigorously cross-examined [detective] on the accuracy of the cell phone data"). Accordingly, we conclude that any claimed impropriety with respect to the admission of Smola's testimony was harmless error because we have a fair assurance that it did not substantially sway the jury's verdict.
III
In light of our conclusions in parts I and II of this opinion, we must address the defendant's proffered alternative grounds for affirming the judgment of the Appellate Court ordering a new trial, specifically that the trial court improperly (1) admitted Parker's testimony regarding the dog bite conversation between the defendant and Taylor, (2) admitted Minott's testimony that Taylor had asked for a tissue when boarding the bus, (3) admitted Smola's testimony that Taylor told him the backpack came from the victim's apartment in violation of Crawford v. Washington , supra, 541 U.S. at 68, 124 S.Ct. 1354, and (4) denied the defendant's motion for a mistrial after Olson testified regarding the nature of Taylor's injuries.[21]
**620 A
We can quickly dispose of the defendant's claim that the trial court improperly admitted into evidence Parker's testimony regarding the dog bite conversation between the defendant and Taylor because it was not relevant to a material issue in the case.[22] For the reasons aptly stated by the Appellate Court, we conclude that the trial court did not abuse its discretion in determining that Parker's testimony about the dog bite conversation was relevant evidence because it "demonstrat[ed] the defendant's intimate involvement with Taylor in the criminal events that had taken place moments prior to the conversation." State v. Holley , supra, 160 Conn. App. at 626, 127 A.3d 221.
B
The defendant's next claim, that the trial court improperly admitted hearsay evidence by permitting Minott to testify regarding Taylor's request for a tissue, similarly requires little discussion. For the reasons aptly stated by the Appellate Court, we conclude that, because Minott's testimony that Taylor had asked him for a tissue was elicited on cross-examination by the defendant, under State v. Smith , 212 Conn. 593, 610-11, 563 A.2d 671 (1989), "the defendant cannot successfully challenge the admission of evidence when he was responsible for placing that evidence before the jury." State v. Holley , supra, 160 Conn. App. at 631, 127 A.3d 221.
*542 C
The defendant's claim that the trial court improperly admitted Smola's testimony that Taylor had told him that the item in the backpack came from the victim's apartment, however, requires a more comprehensive **621 discussion.[23] The defendant argues that the trial court improperly applied the open door doctrine to admit this testimony, which was testimonial hearsay barred by Crawford v. Washington , supra, 541 U.S. at 68, 124 S.Ct. 1354. See footnote 5 of this opinion. In response, the state, relying on, inter alia, State v. Brokaw , 183 Conn. 29, 33, 438 A.2d 815 (1981), argues that, because Smola's testimony was responsive to a question that the defendant asked during cross-examination, the trial court properly exercised its discretion in declining to strike the challenged answer. The state further argues that any Crawford violation was harmless error not requiring reversal. We agree with the state and conclude that the trial court did not abuse its discretion in determining that Smola's testimony was responsive to the defendant's question.
The record reveals the following additional relevant facts and procedural history. The defendant's motion in limine seeking to preclude Taylor's hearsay statements included Taylor's statement to Olson that the defendant had a pair of boxed sneakers in his backpack that had been taken from the victim's apartment. The trial court granted the motion, indicating that such testimony would violate the defendant's confrontation rights under Crawford. As previously noted, the state subsequently called Taylor as a witness at trial, and he refused to testify.
Thereafter, during Smola's testimony; see part II B of this opinion; the defendant cross-examined him about his perceptions with respect to the shoe box in the video, in comparison to one taken from the victim's apartment. The following colloquy ensued:
"[Defense Counsel]: Detective, isn't it true that you cannot testify with any degree of certainty that that **622 thing in the backpack came from [the victim's] apartment?
"The Court: Well, it's two questions, with any degree of certainty or cannot testify.
"[Defense Counsel]: Isn't it true that you cannot testify that [the] item, that thing in the backpack-
"[The Witness]: Someone told me that [it ] was -
"[Defense Counsel]: Objection, Your Honor.
"The Court: Well, you asked the question, counsel.
"[The Witness]: Donele Taylor said that.
"[Defense Counsel]: Your Honor-
"The Court: Quiet." (Emphasis added.)
At the request of defense counsel, the trial court excused the jury and the witness. After argument on the defendant's objection that Smola's answer was nonresponsive because the defendant had sought a yes or no answer, the trial court agreed with the state that Smola's answer was responsive to the defendant's question, albeit in greater elaboration than the defendant had sought.[24] After the jury returned *543 to the courtroom, **623 Smola admitted on cross-examination that he had previously testified that he did not know "as a matter of fact" whether the object in the backpack was a shoe box, and that he had "just indicated to the jury that ... [he did not] know if it's a shoe box."
It is well settled that, "[s]o long as the answer is clearly responsive to the question asked, the questioner may not later secure a reversal on the basis of any invited error." State v. Brokaw , supra, 183 Conn. at 33, 438 A.2d 815. This includes those answers that are "not phrased in language the defendant would have preferred." State v. Smith , supra, 212 Conn. at 611, 563 A.2d 671 ; see also Eberhard v. State , 539 So.2d 539, 539 (Fla. App. 1989) ("[a]lthough some of the answers by the witness could have been more directly responsive to the question asked, they were generally made in response to the interrogation by defense counsel"). Thus, "[e]xamining another party's witness entails risk in deciding what to ask and how to craft questions"; United States v. Zitt , 714 F.3d 511, 513 (7th Cir. 2013) ; because "where the question posed is ambiguous, the latitude for responsiveness of the answer is necessarily broader." Bryant v. State Farm Fire & Casualty Ins. Co. , 447 So.2d 181, 184 (Ala. 1984) ; see also People v. Vincent , 34 App.Div. 2d 705, 706, 309 N.Y.S.2d 690 ("the defense must bear the burden of its poorly framed question, since it 'opened the **624 door' to the witness' reply"), aff'd, 27 N.Y.2d 964, 267 N.E.2d 273, 318 N.Y.S.2d 498 (1970). This is particularly so when counsel has "ample warning he [or she is] in a dangerous area," such as topics covered by prior motions in limine. State v. Lawrence , 123 Ariz. 301, 304, 599 P.2d 754 (1979). Whether to strike an answer as unresponsive to the question asked is a matter committed to the discretion of the trial court, and we review the trial court's decision for an abuse of that discretion.[25] See *544 State v. Pecciulis , 84 Conn. 152, 163, 79 A. 75 (1911) ; see also United States v. Johnson-Dix , 54 F.3d 1295, 1303 (7th Cir. 1995) ; Eberhard v. State , supra, at 539 ; Hufstetler v. State , 171 Ga. App. 106, 108, 319 S.E.2d 869 (1984) ; Maisto v. Maisto , 123 N.J.L. 401, 404, 8 A.2d 810 (Sup. 1939), aff'd, 124 N.J.L. 565, 12 A.2d 890 (1940).
Although defense counsel framed the question to Smola in a somewhat leading manner, insofar as the question conceivably could be answered "yes" or "no," this did not mean that the trial court was required to **625 strike Smola's explanatory response as not responsive.[26] Courts have held that such answers may well be responsive, particularly when the question is poorly framed or broad, despite its somewhat leading nature. For example, in People v. Vincent , supra, 34 App.Div. 2d at 706, 309 N.Y.S.2d 690, a New York court held that the answer, " '[h]e placed his mouth upon my private parts,' " was responsive to the "broad question" of, " '[a]fter this incident occurred were there any further incidents that night?' " Similarly, in United States v. Johnson-Dix , supra, 54 F.3d at 1295, the Seventh Circuit held that the District Court "clearly did not abuse its discretion in allowing [a federal] agent's answer to stand," because that answer, which had indicated that the defendant " 'was ... telling half-truths the entire night,' " was responsive to, and "invited by," the following question from defense counsel: " 'In other words, you asked-didn't [the defendant] willingly tell you, affirmatively tell you, [that] he [was] willing to answer your questions?' " Id., at 1304 ; see id. (The court agreed with the District Court's assessment of this question as asking the agent " 'whether [the defendant] was being cooperative. That question permitted that answer. You are trying to suggest **626 through your question that he was cooperative and truthful, and *545 the agent said [the defendant] was [not] telling the truth. So, there is no basis for a mistrial and you invited that answer.' "); see also United States v. Zitt , supra, 714 F.3d at 512-13 (informant fairly answered question of whether defendant had known that he had "gone to prison in 2005" by responding that " 'I was in prison while [the defendant was] locked up,' " despite prohibition on admitting evidence of defendant's prior convictions); Sherman v. Brown , 52 R.I. 302,160 A. 867, 868 (1932) (trial court did not abuse its discretion in denying motion to strike after witness was asked whether he had " 'been hung up before that same day' " and had responded " '[a]t South Kingston and Richmond' ").[27]
Having reviewed authorities on both sides of this issue, we conclude that the trial court did not abuse its discretion in determining that Smola's answer was responsive to the defendant's question about his ability to testify. First, the question-although somewhat leading in nature-was ambiguous and imprecise, insofar as it questioned Smola's ability to testify about the link between the shoe box and the defendant's backpack. This was a particularly high risk question for the defendant, given his awareness that the Crawford material had been the subject of the motion in limine, with the possibility that any questioning that might hint at the source of his purported knowledge could trigger the disclosure of that material. Accordingly, we conclude **627 that the trial court did not abuse its discretion in declining to sustain the defendant's objection to Smola's testimony.[28]
D
Finally, we address the defendant's claim that the trial court improperly denied his motion for a mistrial in response to Olson's testimony that Taylor had stated that the injury on his hand was a bite. The defendant contends that the trial court had abused its discretion in declining to declare a mistrial because the jury was present for arguments on his motion and because the court's curative instruction was delivered late and "did more harm than good" by "stress[ing] the significance" of Olson's improper testimony. The defendant further contends that Olson's testimony, when coupled with Parker's testimony about the conversation between Taylor and the defendant on the bus, was itself "sufficient to support a conviction, at a minimum, on the three conspiracy charges with which the defendant had been charged." Finally, the defendant contends that the jury reasonably could infer that Taylor did not testify because he was guilty, and that this evidence was critical to tying the defendant to Taylor. In response, the state contends that the trial court properly denied the defendant's motion for a mistrial because the trial court struck the improper testimony and instructed the jury to disregard it. The state also argues that a mistrial is unwarranted because Olson's improper testimony was a *546 "minor coda to the extensive independent proof connecting Taylor to the crime scene," including DNA evidence, the sale of the murder weapon, and the surveillance videos showing him fleeing the scene. We agree with the state and conclude that the trial court did not abuse its discretion in denying the defendant's motion for a mistrial. **628 "[T]he principles that govern our review of a trial court's ruling on a motion for a mistrial are well established. Appellate review of a trial court's decision granting or denying a motion for a [mistrial] must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided.... Thus, [a] motion for a [mistrial] is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds.... In our review of the denial of a motion for [a] mistrial, we have recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion....
"In reviewing a claim of abuse of discretion, we have stated that [d]iscretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.... In general, abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors.... Therefore, [i]n those cases in which an abuse of discretion is manifest or where injustice appears to have been done, reversal is required." (Citation omitted; internal quotation marks omitted.) State v. Nash , 278 Conn. 620, 657-58, 899 A.2d 1 (2006) ; see State v. Berrios , 320 Conn. 265, 274, 129 A.3d 696 (2016). In determining whether a mistrial was required because of a potentially prejudicial event during the trial, such as testimony stricken as improper, we also consider "whether the trial court's curative instructions remedied any prejudice that might have occurred." (Internal quotation marks omitted.) State v. Cook , 262 Conn. 825, 842, 817 A.2d 670 (2003).
**629 We conclude that the trial court did not abuse its discretion in determining that Olson's stricken testimony was not so prejudicial as to deprive the defendant of a fair trial. First, as requested by the defendant, the trial court gave a detailed instruction to the jury, directing it not to consider that testimony and reminding it that determining the nature of the injury was the province of the jury. The trial court reiterated this instruction in its final charge to the jury. See footnote 7 of this opinion. "As we previously have stated, [i]n the absence of an indication to the contrary, the jury is presumed to have followed [the trial court's] curative instructions.... [T]he burden is on the defendant to establish that, in the context of the proceedings as a whole, the stricken testimony was so prejudicial, notwithstanding the court's curative instructions, that the jury reasonably cannot be presumed to have disregarded it." (Internal quotation marks omitted.) State v. Cook , supra, 262 Conn. at 844, 817 A.2d 670.
Second, given the presumed curative effect of these instructions, we disagree with the defendant's assessment that the trial court's refusal to excuse the jury, which caused him to make a motion for a mistrial in its presence, "thereby highlight[ed] the significance of the testimony that the jurors had just heard." Cf. State v. Edge , 47 Conn. App. 743, 749, 707 A.2d 1271 (trial *547 court properly denied motion for mistrial when trial court ruled on motion for judgment of acquittal in presence of jury because "the trial court's extensive cautionary instructions to the jury made it clear that the court's ruling on the motion did not constitute an opinion regarding the credibility of the state's witnesses or the defendant's guilt"), cert. denied, 244 Conn. 919, 714 A.2d 7 (1998). We also disagree with the defendant's view that the specificity of the instruction "did more harm than good" and created the "indelible impression ... that the testimony must be credible" by explaining that **630 it was stricken because Taylor did not testify. The instruction specifically noted that the testimony was stricken because Taylor was not present for cross-examination, and did not endorse its credibility in even a glancing manner.
Finally, the statement that Taylor had previously indicated that his injury was a bite-even if considered more definitive evidence than the jury's interpretation of the photographic exhibits-was not overly prejudicial when considered in the light of other evidence linking Taylor to the crime scene, namely, DNA evidence from the baseball hat he dropped at the scene, the surveillance videos showing his flight, and the fact that he sold the murder weapon shortly after the murder. "Although the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial ... and the whole proceedings are vitiated.... If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided." (Internal quotation marks omitted.) State v. Guilbert , 306 Conn. 218, 270, 49 A.3d 705 (2012). Accordingly, we conclude that the trial court did not abuse its discretion in declining to order the drastic remedy of a mistrial.
The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.
In this opinion ROGERS, C.J., and EVELEIGH and ESPINOSA, Js., concurred.
D'AURIA, J., with whom PALMER and McDONALD, Js., join, dissenting.
I agree with the Appellate Court's conclusion that the trial court improperly admitted certain testimony as lay opinions over the objections of **631 the defendant, Kenny Holley. State v. Holley , 160 Conn. App. 578, 619-22, 631-37, 127 A.3d 221 (2015). Specifically, I agree that the trial court improperly admitted Sergeant Donald Olson's testimony that the wounds on the wrist of Donele Taylor, the defendant's alleged accomplice, were the result of a bite. I also agree with the Appellate Court that the trial court improperly allowed Detective Jason Smola to give his opinion that an object depicted in the surveillance video from the bus was a "sneaker box," even though Smola had not personally observed either the object or the events the video depicted. Because I conclude that the admission of this testimony was both improper and harmful, I would affirm the Appellate Court's judgment reversing the defendant's conviction and remanding the case to the trial court for a new trial. I therefore respectfully dissent from the majority's decision to the contrary.
I
I begin with Olson's testimony that Taylor had a bite on his wrist. Olson had interviewed Taylor in the weeks after the murder. During the interview, Taylor told *548 Olson that the victim had bitten him while they struggled inside the victim's apartment, shortly before the victim was shot. At trial, the state asked Olson about the nature of wounds that Taylor had on him at the time of the interview, and Olson responded that Taylor had a "bite on his wrist ...." The trial court allowed the testimony on the ground that it was based on what Olson "observed."
The testimony concerning the cause of the marks on Taylor's wrist was critical evidence for the state. The state had strong evidence linking Taylor to the victim's murder, but lacked similarly strong evidence against the defendant. To implicate the defendant in the victim's murder, the state relied on testimony about a conversation between Taylor and someone else, apparently the **632 defendant, while they rode on a bus just after the crime occurred. A fellow passenger on the bus testified that she overheard Taylor telling his companion, "I can't believe I got bit by the dog-by a dog," to which the companion, allegedly the defendant, responded, "that was a big dog; it was a big dog." The state suggested in its closing argument that the victim was the "big dog" that had bitten Taylor during a struggle and that the defendant's reply indicated he was aware of the size of the "big dog" that had inflicted the bite and he had witnessed the bite occur, helping to place him inside the apartment when Taylor and victim struggled. Olson's testimony helped to establish that the wounds on Taylor's wrists were, in fact, caused by a bite and, thus, bolstered the credibility and accuracy of the passenger's testimony about the statements she heard on the bus.
The Appellate Court concluded, however, that Olson's testimony was not a proper lay opinion because a lay witness generally may not testify about the cause of a wound. See State v. Holley , supra, 160 Conn. App. at 621-22, 127 A.3d 221. Regardless of whether I would agree with this general proposition, I am persuaded that Olson's testimony should not have been admitted as a lay opinion. No foundation was laid to show that his testimony was based on his personal observations rather than on inadmissible hearsay from Taylor, and his testimony was not helpful to the jury.
A
Taylor told Olson that his wounds were the result of a bite. But Olson could not testify as to what Taylor had told him because admitting Taylor's hearsay statements into evidence would have violated the defendant's constitutional right to confront his accusers. The confrontation clause of the Sixth Amendment to the United States constitution guarantees that "[i]n all criminal prosecutions, **633 the accused shall enjoy the right ... to be confronted with the witnesses against him ...." U.S. Const., amend VI. This "bedrock" guarantee requires that the defendant have the opportunity to cross-examine any witness who gives testimony against him, and this applies to certain out-of-court statements that the state might seek to introduce into evidence. Crawford v. Washington , 541 U.S. 36, 42, 50-52, 124 S.Ct. 1354, 158 L.Ed. 2d 177 (2004). The confrontation clause bars the state from admitting into evidence, as proof of guilt, any out-of-court statement that is "testimonial" in nature unless the defendant has had the opportunity to cross-examine the speaker. Id., at 55-56, 68, 124 S.Ct. 1354. "[T]estimonial" statements include confessions given to police officers and statements made in response to police interrogation. Id., at 51-52, 68, 124 S.Ct. 1354 ; accord State v. Pierre , 277 Conn. 42, 77-78, 890 A.2d 474, cert. denied, *549 547 U.S. 1197, 126 S.Ct. 2873, 165 L.Ed. 2d 904 (2006).
Taylor's statements to Olson concerning his wound being a bite mark were unquestionably testimonial in nature, as he made the statements when he confessed to Olson of having participated in the victim's murder, and, thus, were barred from admission unless they comported with Crawford. The state intended to use them as evidence of the defendant's guilt, but Taylor was unavailable for cross-examination. When called to the stand outside the presence of the jury, Taylor refused to answer any questions and was held in contempt. The defendant, thus, could not cross-examine him concerning his statements, and, consequently, they could not be admitted into evidence against the defendant. See Crawford v. Washington , supra, 541 U.S. at 68, 124 S.Ct. 1354. It follows that Olson could not testify as to what Taylor had told him about his wounds.
B
To avoid this confrontation clause problem, the state argues that the trial court properly admitted Olson's **634 testimony as a lay opinion based on his observations of Taylor's injuries, not on what Taylor had told him. I am not persuaded.
At the time the evidence was admitted, no foundation whatsoever had been laid to establish that Olson's testimony was an opinion formed on the basis of his personal observations, rather than a parroting of what Taylor had told him. Indeed, all of the information put before the trial court up to the point it admitted Olson's testimony established only that Olson had learned that Taylor's wounds were caused by a bite because Taylor had told him so.
Before trial, the defendant filed a motion in limine to exclude any of Taylor's statements to police from being admitted into evidence. As recounted by defense counsel during argument on the motion, Taylor gave two separate confessions to police. In the first, Taylor implicated himself as the shooter and said that someone else had been inside the apartment, but he did not know who that person was or what they were doing there. In the second, Taylor said that he had been in the apartment when the victim was murdered, but that the defendant had shot the victim. While giving these confessions to Olson, Taylor indicated that he still had bite marks and scratches from the struggle with the victim, and he said that the victim had bit him on his wrist. During argument on the motion, the state explained that it did not intend to offer into evidence Taylor's statement implicating the defendant, but would offer his statement that he had a bite on his wrist and that it came from the victim. The state argued that Taylor's statement was admissible because, although hearsay, it was against the speaker's penal interest, rendering it admissible. See State v. Smith , 289 Conn. 598, 630-31, 960 A.2d 993 (2008). The defendant responded that the state's position was mistaken under Crawford , requiring the exclusion of Taylor's statement because of his unavailability **635 for cross-examination. The court took the motion under advisement, explaining that it wanted to further consider whether the statement was against Taylor's penal interest. The defendant reiterated that, even if it was otherwise admissible as a statement against penal interest, Taylor's statement would be barred by Crawford.
The admissibility of Taylor's statement, which had significant inconsistencies, came up again early in the trial. During the first day of trial, the state called as a witness Officer Woodrow Tinsley, who had photographed Taylor's injuries. When the state asked Tinsley whether he had been asked to take photographs of Taylor, the defendant's counsel objected and asked to be *550 heard outside the presence of the jury. The defendant apparently was concerned that the state would attempt to elicit Taylor's statements about having a bite mark from the victim, but the state responded that it intended to ask Tinsley only whether he had photographed Taylor's injuries, not about their nature or how he received them. The state further offered, however, that it intended to have Olson testify "that in talking to ... Taylor ... Taylor at some point indicated that [he had] injuries on his hands [that] came from being bit by [the victim] during the course of the altercation that resulted in [the victim's] death." The defendant renewed his arguments that any such testimony would be barred under Crawford. After further argument, the state represented that the court had already ruled Taylor's statements admissible, stating: "I thought Your Honor had agreed with me that the statements about the bite marks were nontestimonial in nature ...." Even though the record contains no indication that the trial court had previously ruled on the matter but indeed indicates it had reserved ruling, the court agreed with the state, responding: "I had; I remember that. Everything else was barred; that was allowed in." Defense counsel protested, **636 stating that "I did not believe that you had ruled on that specific part," and the court replied, "Well, if it wasn't clear, I'm ruling now: it's allowed in." The defendant continued to argue the effect of Crawford and asked permission to further brief the issue, but the trial court denied the request.
Two days later, on the third day of trial, the trial court changed its mind about admitting Taylor's statement concerning the bite mark. The court explained: "Now, I did some research on my own on the statements and right now, based on what the evidence is, because the defense hasn't challenged anything concerning that statement, I'm going to disallow the statement concerning the bite. I understand that it is a statement against penal interest; the entire confession was a statement against penal interest. But if there's even a hint anywhere that that bite was anything other than where it came from, that statement does come in, and that includes during closing argument as well. I will reopen this case if there's a hint during closing argument that the bite was anything other than what it is. So, remember, I'll stop the trial and allow it in at that point."[1] The state responded: "I will intend to have-based on Your Honor's ruling, I will still intend to have [Olson] come back today and testify that he interviewed [Taylor] and during the course of that interview they took the photographs **637 ...." The court responded: "That's fine. But that doesn't indicate any statement."
When Olson testified, however, the state asked him whether Taylor had any injuries on him and the nature of those injuries. The following colloquy took place:
*551 "[The Prosecutor]: Continuing on with the investigation into the ... homicide, did you have occasion to meet with [Taylor] on July 16, [2009]?
"[Olson]: Yes.
"[The Prosecutor]: And did you speak to [Taylor], yes or no?
"[Olson]: Yes.
"[The Prosecutor]: And, as a result of your conversations with [Taylor] and what you knew to date in the investigation, did you ask [Tinsley] to take any photographs of injuries to [Taylor]?
"[Olson]: Yes.
"[The Prosecutor]: What was the nature of the injuries?
"[Olson]: He had a bite on his wrist and-"
"[Defense Counsel]: Objection, Your Honor.
"[The Court]: I'm going to allow the testimony. That's what he observed. Thank you. You can cross-examine him about that."
The state argues that, contrary to the Appellate Court's conclusion, the trial court properly admitted Olson's testimony as a lay opinion about what had caused Taylor's injuries based on his observations of Taylor's wounds. I disagree.
Without any foundation that Olson's testimony was an opinion based on his own perceptions, rather than **638 on the inadmissible information he learned from Taylor, it could not properly be admitted as a lay opinion. Lay witnesses generally must testify only to facts within their personal knowledge, not their opinions, and the jury may draw its own conclusions from those facts. See Jacobs v. General Electric Co. , 275 Conn. 395, 406, 880 A.2d 151 (2005). Nevertheless, opinions from lay witnesses sometimes may better convey an idea to the jury, rather than having the witness recount each individual perception leading to that opinion, for example, an opinion that a person was intoxicated. See, e.g., State v. McNally , 39 Conn. App. 419, 424, 665 A.2d 137, cert. denied, 235 Conn. 931, 667 A.2d 1269 (1995). A party seeking to admit a lay opinion must first establish that it is based on the witness' own perceptions before it may properly be admitted. See Conn. Code Evid. § 7-1 (lay witness may not testify to opinion "unless the opinion is rationally based on the perception of the witness"); see also Jacobs v. General Electric Co. , supra, at 406-407, 880 A.2d 151 (lay witness opinions must be based on personal knowledge of witness). Hearsay does not constitute a proper foundation for a lay opinion. See, e.g., United States v. Lloyd , 807 F.3d 1128, 1154 (9th Cir. 2015) ("a lay opinion witness may not testify based on speculation [or] rely on hearsay" [internal quotation marks omitted] ); United States v. Gadson , 763 F.3d 1189, 1208 (9th Cir. 2014) (lay opinion that relies on hearsay is inadmissible because it is not based on witness' own perceptions), cert. denied, --- U.S. ----, 135 S.Ct. 2350, 192 L.Ed.2d 149 (2015); United States v. Garcia , 413 F.3d 201, 213 (2d Cir. 2005) (lay opinion must be based on personal perceptions and cannot be based on information learned from others).[2] **639 No proper foundation was laid in the present case. Up to the point when Olson testified that Taylor's wounds were from a bite, Olson had said exactly nothing about forming an opinion of the cause of Taylor's wounds on the basis of his own observations. The only basis given in the record *552 for his testimony was that Taylor had told Olson that the victim had bit him. In fact, the questions leading up to Olson's testimony about the bite were directed at Olson's conversation with Taylor, not his observations. The state had asked Olson "did you speak to [Taylor]" and whether, as a result of his "conversations " with Taylor, he had asked another officer to photograph Taylor's injuries.[3] (Emphasis added.) Consequently, at the time the trial court admitted the testimony, it had no basis for concluding that Olson's testimony was based on his observations rather than what Taylor had told him. Its decision to admit this lay opinion evidence was without an adequate foundation.
After the evidence was admitted-and after the trial court's unfounded conclusion that the testimony was based on the witness' observations-Olson clarified that Taylor "appeared to have a bite mark on his wrist ...." (Emphasis added.) In my view, this was too little and too late to cure the trial court's error. This comment was too late to serve as a foundation for Olson's testimony because it came after the trial court had ruled the testimony admissible and, therefore, it could not possibly have served as a valid basis for the court's exercise of its discretion in admitting the testimony. Even if this after the fact remark could have somehow cured the trial court's error, it was too little because it did not establish whether Olson had reached an independent opinion based solely on the appearance of the **640 wound, or whether his observations were simply consistent with what he had already heard from Taylor. In fact, shortly after this testimony, Olson specifically acknowledged that he had learned that the wound was a bite from talking to Taylor, as evidenced by the following exchange:
"[The Prosecutor]: After talking to [Taylor], yes or no, did you learn what that injury was on his wrist?
"[Olson]: Yes.
"[The Prosecutor]: And what was it?
"[Olson]: A bite."
The defendant's counsel then objected, and the trial court sustained the objection, but the import of the testimony is clear-Olson learned that Taylor's wounds were caused by a bite on the basis of what Taylor had told him.[4] With nothing in the record to establish that Olson had reached an opinion independently based on his own perceptions-an opinion derived from admissible evidence-I conclude that the state failed to lay a proper foundation for the admission of this testimony.
I acknowledge that the trial court has broad discretion when ruling on evidentiary *553 matters, but, in the **641 present case, that discretion was constrained by the confrontation clause and the limitations on admitting a lay opinion. Ordinarily, the trial court might be permitted to infer from the circumstances that a witness' testimony was likely based on that witness' own perceptions, but, due to the constitutional implications of the evidence at issue in the present case, the trial court had a responsibility to act with greater care when considering whether to admit this evidence. The trial court's ruling to exclude evidence barred from admission pursuant to the federal constitution was critical to ensuring that the defendant received a fair trial. The court knew from the state's representations that Olson likely derived his knowledge of the bite from what Taylor had told him. It was the responsibility of the trial court to ensure that Olson's supposed opinion was not based on this hearsay, which was constitutionally inadmissible pursuant to Crawford. The state failed to lay a proper foundation for Olson's testimony, and the trial court did not insist that it do so. On this record, I am persuaded that the admission of Olson's testimony was not a proper exercise of the court's discretion.
C
Besides the lack of a proper foundation, the trial court's admission of Olson's testimony runs afoul of another requirement for admitting lay opinion testimony. A lay opinion must not only be based on the witness's perceptions, but also must be "helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." Conn. Code Evid. § 7-1. Olson's supposed opinion on the origin of Taylor's wound was unhelpful and unnecessary because the police had taken photographs depicting how the wounds looked when Olson interviewed Taylor. Olson testified that those photographs were a fair and accurate representation of the marks on Taylor as he saw them. The helpfulness of a lay opinion describing a **642 wound is diminished, if not extinguished, when the jury has a photograph that fairly and accurately depicts the wound as the witness saw it. Of course, photographs sometimes fail to capture precisely how something appeared and some additional description or an opinion may be called for to facilitate a complete understanding of what the witness saw. The state, however, laid no foundation to suggest that the photograph had not fully captured the appearance of the wound, such that Olson's opinion testimony would be of help. Indeed, the state acknowledged in its brief to this court that "Olson's testimony was cumulative of the photographs in evidence." The state was free to use the picture of Taylor's wound alone to argue that the jury should conclude that it was caused by a bite, but, given the confrontation clause problems associated with Olson's opinion testimony and the lack of any demonstrated need to present that opinion as evidence when the photograph was available, I agree with the Appellate Court that the trial court exceeded the bounds of its discretion when admitting Olson's testimony.
II
I also agree with the Appellate Court that the trial court improperly allowed Smola to testify as to his belief that the defendant was carrying a shoebox in a backpack shortly after the crime occurred. According to the information put before the trial court, the state had a video recording from a bus depicting Taylor and another person, apparently the defendant, getting onto the bus near the location of the murder shortly after it occurred. The defendant is seen carrying a backpack, which he opened to retrieve money to pay *554 the bus fare. Through the small opening in the backpack, there appears to be an object of some sort inside. At an earlier probable cause hearing, Smola testified that he had no personal knowledge of what was in the backpack-he had not personally witnessed the events depicted in the **643 video, and the backpack and the object inside were not recovered by police. Instead, the state proffered that Smola had a belief about what was in the backpack based on what he saw in the video. In addition, the state proffered that Taylor had told officers during his confessions that he had looked in the defendant's back-pack while on the bus and saw a shoebox inside.
The defendant moved to preclude Smola from identifying the object in the backpack because he lacked personal knowledge of what it was, but the trial court allowed him to testify as to his opinion about what the object looked like. While the video was playing before the jury at trial, the prosecutor noted that there appeared to be a backpack depicted in the video and asked Smola, "[w]ere you able to determine through your investigation what you believe is contained within that backpack?" (Emphasis added.) After the trial court overruled the defendant's objection, Smola answered: "It's my belief through investigation it was a sneaker box." (Emphasis added.) The testimony was significant for the state because the victim was known to sell shoes, and the defendant's possession of a shoebox shortly after the crime could implicate him in the robbery and murder.
In my view, however, Smola's testimony was not properly admitted as a lay opinion. The majority does not directly address the propriety of admitting his testimony, but, before concluding that any error was harmless, cites to mixed authority about whether witnesses generally may narrate events depicted in a video that the witness did not personally observe. Compare United States v. Begay , 42 F.3d 486, 502-503 (9th Cir. 1994) with People v. Sykes , 362 Ill.Dec. 239, 972 N.E.2d 1272, 1278 (App. 2012). Perhaps, in some circumstances, our rules of evidence should permit a lay witness to narrate or opine about what they see depicted in a video, even without personal knowledge of what is depicted. As the majority **644 points out, courts are divided on whether such narration is appropriate. But that is not what Smola was asked to do in the present case. The state's question instead asked Smola whether he had determined through his investigation , what he believed was in the backpack. The question was not limited to asking what Smola had seen in the video, but explicitly asked him to draw more broadly upon other knowledge from his investigation when answering. This would, presumably, include the information he had learned from Taylor's statements to police-hearsay evidence that was inadmissible under Crawford. See part I A of this dissenting opinion. By the time the state posed the question, it had previously alerted the trial court to the inadmissible hearsay evidence that Taylor told police that the defendant had a shoebox in his backpack. As a result, the court should have acted with greater care to ensure that Smola's testimony was founded solely on his own impressions and did not improperly rely on hearsay evidence barred from admission by the confrontation clause. The state's question, however, explicitly invited Smola to rely on this inadmissible hearsay evidence. Moreover, because the jurors could view the video for themselves and draw their own conclusions about what it depicted, Smola's opinion about what the backpack contained would be unhelpful and unnecessary to the members of the jury. The state certainly could point to the video during its closing argument and claim to the jury that the object *555 shown in the backpack could be a shoebox, but I am persuaded that Smola's testimony, impermissibly bolstering the state's theory in response to the state's question, should have been excluded.
III
Although the Appellate Court concluded that Olson's and Smola's challenged testimony could not properly be admitted as lay opinions, it did not conduct a harmful error analysis because it had separately concluded that **645 the defendant was entitled to a new trial based on a violation of his right to present a defense. State v. Holley , supra, 160 Conn. App. at 619 n.15, 127 A.3d 221. Even though constitutional concerns are present, upon conducting my own analysis under the standard of review for a nonconstitutional error, I "do not have the requisite fair assurance that the error did not substantially affect the verdict," leading me to conclude that the defendant has established that a new trial is warranted. (Internal quotation marks omitted.) State v. Favoccia , 306 Conn. 770, 809, 51 A.3d 1002 (2012). In my view, the improperly admitted evidence helped to significantly strengthen the state's evidence tying the defendant to the murder, which was otherwise rather thin.
The state had strong evidence implicating Taylor in the victim's murder, including DNA evidence placing him inside the victim's apartment and Taylor's confessions, but the state's case against the defendant was not nearly as strong. With Taylor's statements inadmissible against the defendant, the state's case turned on its ability to present other evidence to show that the defendant had actually participated in the robbery and/or the murder. The state had no forensic evidence to accomplish this-investigators did not find either the defendant's fingerprints or DNA in the apartment. Other than Taylor's inadmissible statements, the state had no eyewitness testimony to directly implicate the defendant. Unlike Taylor, the defendant did not give any self-incriminating statements to police.
Without the challenged testimony from Olson and Smola, the state's evidence linking the defendant to the murder was limited. The state had video recordings that put Taylor together with the defendant as they ran to a bus stop and boarded a bus near the crime scene around the time the crime occurred. Those recordings, however, did not show whether the defendant had been inside the apartment with Taylor when the victim was **646 murdered, leaving open the possibility that he had met up with Taylor after Taylor had left the apartment, or that the defendant had waited outside the apartment while Taylor went in, without any knowledge of what Taylor might have been doing inside.
The only other evidence that arguably could have placed the defendant inside the apartment was the testimony from another passenger on the bus, who had overheard the defendant make the "big dog" comment. The passenger testified, however, that she did not see any injuries or blood on the person who said he had been bitten. The state also called the bus driver to testify that, after boarding the bus, Taylor had asked for a tissue, presumably for his wounds, but the driver testified that he did not see anything about Taylor that would have required use of a tissue.
To connect the defendant to the murder with this evidence, the jury was required to draw a chain of inferences. The jury would first have to conclude that the defendant was the person with Taylor and then infer from their comments on the bus that Taylor had recently been bitten, that the "big dog" that bit Taylor was actually the victim, and that the defendant's knowledge of the victim's size suggested that the *556 defendant had seen the victim and knew that he had bitten Taylor. From these inferences, the jury would have to be satisfied, beyond a reasonable doubt, that the defendant had participated in the crime. Without the challenged testimony from Olson and Smola, any conviction would thus turn solely on the credibility and accuracy of the testimony from the passenger and the bus driver.
Olson's and Smola's challenged testimony thus significantly filled in holes in the state's case. Olson's testimony that Taylor, in fact, had a bite wound on his wrist in the days after the murder corroborated the passenger's testimony and helped mitigate the impact **647 of the evidence that neither the passenger nor the bus driver had noticed any wounds on Taylor while he was on the bus. In addition, Smola's testimony that the defendant had a shoebox with him on the bus just after the crime provided an alternative basis for inferring that the defendant had been inside the victim's apartment and had participated in the crime by suggesting that he may have taken the shoebox from the victim's apartment, implicating him in the robbery and murder. I am not sufficiently confident that the jury would have found the defendant guilty of the crimes charged without this additional evidence. I thus cannot conclude that the trial court's evidentiary errors were harmless.
The state nevertheless asserts that the admission of Olson's and Smola's challenged testimony, even if improper, was harmless. I disagree.
The state first asserts that Olson's testimony about Taylor having been bitten on his wrist was harmless because the jury could have viewed the photographs and likely would have concluded for itself that the marks were from a bite, even in the absence of Olson's testimony. I have viewed those same photographs, and, like the Appellate Court, I am not persuaded. The marks on Taylor's wrist, as depicted in the photographs, appear to be a series of small, parallel scratches, rather than a small arc of impressions that one might normally associate with a bite wound.
Moreover, the lack of clarity about what the photographs depict is demonstrated by the state's arguments to this court, which express some confusion about which of Taylor's marks were the result of a bite. Olson testified that the marks from what he believed to be a bite were on Taylor's wrist and that Taylor also had other lacerations on his hand. But, in its brief and at oral argument, the state directed this court's attention to the photographs and argued that the bite might have **648 been on Taylor's hand, not his wrist, and that Olson was possibly mistaken in his testimony about where Taylor had been bitten. The state's lack of certainty, a product of the lack of foundation for Olson's testimony to begin with, demonstrates just how unclear it is from the photographs that the marks on Taylor's wrist (or hand) were caused by a bite. As a result, I disagree that Olson's confirmatory testimony concerning the nature of the marks was inconsequential.
That the marks on Taylor's wrist do not obviously resemble bite marks, along with the state's supposition that Olson might have testified incorrectly about where the bite marks were located, also undercuts, in my view, a conclusion that Olson was testifying from his own observation when he identified the marks on Taylor's wrist as being caused by a bite. The state did not seek to qualify Olson as an expert in recognizing whether marks on a person's skin were caused by a bite. Because it is not at all clear what the marks depicted in the photograph are, or what caused them, admitting Olson's testimony created a danger that the jury might infer that he knew they were bite marks from some source *557 other than his observation, such as from Taylor. This would have been a fair inference for the jury given that Olson soon after stated exactly that in response to a question that plainly violated the trial court's ruling excluding Taylor's statements from evidence, which forced the trial court to strike the testimony.
As for Smola's testimony identifying the shoebox, the state asserts that the trial court's instructions to the jury mitigated any harm it might have caused. The state notes that the trial court instructed that it was up to the jury members to determine for themselves what was depicted in the video from the bus. The state argues that we must presume the jury followed this instruction and reached its own conclusions about what the video depicted, without placing added weight on Smola's testimony.
**649 Of course, this argument further establishes why it was unnecessary and unhelpful to admit any opinion from Smola about what the video depicted. In any event, the court's instruction did not address the state's question and Smola's response concerning the defendant's possession of a shoebox. Specifically, as discussed previously, the state's question did not limit the basis for Smola's testimony about the defendant having a shoebox in his backpack to only what Smola had seen in the video. He was instead asked whether, as a result of his investigation generally, he had formed a belief about what was in the backpack. This question allowed Smola to draw upon a broader range of information beyond what the video depicted. The jury, thus, could have accepted the trial court's instruction to draw its own conclusion about what the video depicted, but, nevertheless, placed added weight on Smola's testimony on the basis of their belief that he had somehow confirmed-using information other than the video-that the defendant did, in fact, have a shoebox with him on the bus shortly after the crime occurred.
Lastly, I do not believe that subsequent testimony from Smola during cross-examination eliminated any harm from the improper admission of Smola's testimony regarding the shoebox. During cross-examination, the defendant's counsel asked a question presumably aimed at having Smola agree that he had no personal knowledge of what was contained in the backpack. In the course of responding, however, Smola stated that Taylor had told the police that the defendant had a shoebox with him. The defendant's counsel asked, "[i]sn't it true that you cannot testify that that item, that thing in the backpack," at which point Smola interrupted and responded, "[s]omeone told me that that was ... Taylor said that." The defendant moved to strike the answer, but the trial court allowed it because it was responsive to the question. Because the defendant **650 elicited this testimony, its admission would not be precluded by Crawford if otherwise admissible. In my view, however, this exchange did not overcome any harm from the trial court's earlier improper admission of Smola's testimony about the defendant having a shoebox in the backpack because the defendant should not have been placed in the position of having to cross-examine Smola about the shoebox in the first place. If the trial court had properly excluded Smola's challenged testimony, the defendant would have had no reason to question Smola about it, and Smola's response about what Taylor had told police, which the state could not cross examine Taylor about because he was unavailable, would never have been put before the jury.
Because I am persuaded that these evidentiary errors require reversal of the defendant's *558 conviction, I would affirm the Appellate Court decision on these grounds, without considering the first certified question of whether the trial court violated the defendant's constitutional right to present a defense or the defendant's alternative grounds for affirmance. I therefore take no position on how those remaining questions should be decided, and I respectfully dissent from the majority's decision to reverse the Appellate Court's judgment.

We granted the state's petition for certification, limited to the following issues: (1) "Did the Appellate Court correctly determine that the defendant's convictions should be reversed on the basis of his claim that the trial court violated his right to present a defense by preventing him from presenting evidence regarding a bite mark on [Taylor's] hand?" (2) "Did the Appellate Court correctly determine that testimony regarding a witness' observation of a bite mark on [Taylor's] hand violated the limitation on lay opinion testimony [set forth in § 7-1 of the Connecticut Code of Evidence ]?" (3) "Did the Appellate Court correctly determine that [the admission of testimony indicating that] an item visible in the defendant's backpack in a surveillance video was a [shoe box] violated the limitation on lay opinion testimony [set forth in § 7-1 of the Connecticut Code of Evidence ]?" And (4) "[i]f the answer to questions two [or] three is in the affirmative, was any error harmless?" State v. Holley , 320 Conn. 906, 127 A.3d 1000 (2015).

We note that the defendant was also convicted of conspiracy to commit home invasion in violation of General Statutes §§ 53a-48 (a) and 53a-100aa (a) (1), and burglary in the first degree in violation of General Statutes § 53a-101 (a) (2). See footnote 3 of this opinion.

The state also charged the defendant with conspiracy to commit burglary in the first degree in violation of §§ 53a-48 (a) and 53a-101 (a) (2), and conspiracy to commit robbery in the first degree in violation of §§ 53a-48 (a) and 53a-134 (a) (2). State v. Holley , supra, 160 Conn. App. at 582 n.1, 127 A.3d 221. The jury found the defendant guilty on these charges. Id."Although the court sentenced the defendant on the conviction [on] those charges, it subsequently vacated the conviction of those charges and the sentences related to them." Id.

The Appellate Court rejected the defendant's claim that there was insufficient evidence to sustain his conviction of robbery in the first degree, burglary in the first degree, and felony murder. See State v. Holley , supra, 160 Conn. App. at 584-601, 127 A.3d 221. The sufficiency of the evidence is not at issue in this certified appeal, and we do not consider it further.

"Under Crawford v. Washington , supra, 541 U.S. at 68, 124 S.Ct. 1354, the hearsay statements of an unavailable witness that are testimonial in nature may be admitted under the sixth amendment's confrontation clause only if the defendant has had a prior opportunity to cross-examine the declarant. Hearsay statements that are nontestimonial in nature are not governed by the confrontation clause, and their admissibility is governed solely by the rules of evidence.... The circumstances surrounding Taylor's out-of-court statements, made to the police, do not appear to be in dispute." (Citation omitted; internal quotation marks omitted.) State v. Holley , supra, 160 Conn. App. at 603 n.9, 127 A.3d 221.

"The motion in limine provided in relevant part: '[The defendant] and Taylor were charged with almost identical crimes. After confessing to the police on July 16, 2009, Taylor was arrested for felony murder, murder, conspiracy to commit murder, robbery in the first degree and burglary in the first degree.... On February 27, 2012, Taylor [pleaded] guilty to felony murder, robbery in the first degree, and conspiracy to commit robbery in the first degree under the Alford doctrine. [See North Carolina v. Alford , 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970).] On May 4, 2012, Taylor was sentenced to thirty-two ... years in prison....
" 'On July 16, 2009, Taylor gave a written confession after speaking with [the] police about his version of the facts and circumstances of the June 30, 2009 incident. After providing [the] police with the ... written confession, Taylor was immediately arrested and incarcerated on a $2.5 million ... bond. On July 20, 2009, four ... days after his arrest, from prison, Taylor recanted his first confession but refused to sign a written statement. The next day [the] police returned to meet with Taylor [and] he participated in a photo[graphic] identification of [the defendant]. Undersigned counsel is led to believe that Taylor may be unavailable to testify at trial and is refusing to cooperate with the state....
" 'If the state offered the statements of Taylor into evidence, it would clearly be an attempt to prove the truth of the matter asserted in the state's case against [the defendant] in that the statements allege that the defendant was present for and participated in the crime which occurred inside of the [victim's] apartment.
" 'Further, and more importantly, upon information and belief, Taylor will not be available for cross-examination relative [to] the aforementioned statements....
" 'In Taylor's written confession he admits to shooting the [victim] and indicates that he does not know what the other person was doing in the apartment while he was struggling with the [victim]. In this statement, Taylor implicates the involvement of [the defendant] by acknowledging that another person was with him inside of the apartment as this crime took place. Further, it indicates that the "other kid" had a shoe box in his backpack.' " (Footnote omitted.) State v. Holley , supra, 160 Conn. App. at 602-603, 127 A.3d 221.

At the defendant's request, after the luncheon recess, the trial court instructed the jury that "earlier this afternoon before the lunch break ... Olson was on the stand and there was some testimony of his concerning marks, what may or may not be marks on ... Taylor's hand, left and right hands. First of all, it's for you to determine whether ... there were marks on the hands and where those marks came from. Any statements ... Olson heard from ... Taylor are obviously not admissible because we don't have ... Taylor here to discuss what those statements are and he's not subject to cross-examination.... That's why I told you that information that comes from out of court is not necessarily reliable. So that's stricken. As I said ... Olson's observations are just that: observations for you to determine what [exists] on the hands of ... Taylor, if anything. You have the photographs in evidence."
In its final charge to the jury, the trial court instructed the jury that "[c]ertain things are not evidence and you may not consider them in deciding the facts. These include ... [t]estimony that has been excluded or stricken. This testimony would include any comment that ... Taylor allegedly made in the presence of ... Olson concerning bite marks."

Under Golding , "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation ... exists and ... deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) State v. Golding , supra, 213 Conn. at 239-40, 567 A.2d 823 ; see In re Yasiel R. , 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying Golding 's third prong).

The Appellate Court observed specifically that the "court's ruling, occurring in the middle of the trial, did not merely infringe upon the defendant's ability to present evidence, but broadly precluded the defense from even 'hinting' during closing argument that the injury was 'anything other' than a bite. The court's ruling was very significant to the defense because the evidence related to Taylor's injuries, and the state's arguments concerning the origin of those injuries, was a key component of the state's case, which was based on circumstantial evidence. After the state presented evidence from Olson, Parker, and Minott that supported a finding that Taylor had sustained a bite injury, the prosecutor suggested in argument that Taylor had been bitten by the victim. By arguing, as it did, that, shortly after the events at issue, the defendant and Taylor referred on the bus to a 'big dog' that had bitten Taylor, the state was able to present a compelling argument that supported a finding that the defendant was present with Taylor in the victim's apartment and guilty of the crimes with which he was charged. In light of all of the circumstances, we conclude that the defendant was deprived of a fair trial." State v. Holley , supra, 160 Conn. App. at 612, 127 A.3d 221.

In rejecting the state's arguments with respect to the defendant's failure to make an offer of proof, the Appellate Court stated that the trial court, "in conditioning its Crawford ruling in the manner that it did, made an integral component of the state's case off limits to the defense. Moreover, the [trial] court did not merely prohibit the introduction of evidence, but precluded the defendant from challenging, in any manner, the state's evidence concerning Taylor's injuries. The ruling broadly restricted the defendant's right to cross-examine Olson (and other witnesses) and to challenge during argument before the jury the state's evidence related to Taylor's injuries." State v. Holley , supra, 160 Conn. App. at 613 n.13, 127 A.3d 221. The Appellate Court further emphasized that this restriction was significant because the "admissibility of evidence of Taylor's out-of-court statements was hotly contested at trial," and that "the state does not argue that the court's ruling was harmless beyond a reasonable doubt and, from our review of the nature of the defendant's arguments advanced at trial, we conclude that the court's ruling harmed the defense in its ability to counter the state's proof and its theory of the case. Accordingly, we conclude, under these circumstances, that the defendant's failure to make an offer of proof is not fatal to his claim." Id.

The state also claims that the Appellate Court improperly acted sua sponte to consider limitations on the defendant's right to present closing argument on this point, insofar as the defendant's briefing of this claim before that court was limited to the preclusion of evidence, rather than argument. Because we agree with the merits of the state's constitutional arguments, we need not address this claim.

It is well settled that "[o]ffers of proof are allegations by the attorney ... in which he represents to the court that he could prove them if granted an evidentiary hearing.... The purpose of an offer of proof has been well established by our courts. First, it informs the court of the legal theory under which the evidence is admissible. Second, it should inform the trial [court] of the specific nature of the evidence so that the court can judge its admissibility. Third, it creates a record for appellate review.... Additionally, an offer of proof should contain specific evidence rather than vague assertions and sheer speculation.... The offer of proof may be made in the absence of the jury by the testimony of a witness or by a good faith representation by counsel of what the witness would say if questioned." (Citations omitted; internal quotation marks omitted.) State v. Shaw , 312 Conn. 85, 105-106 n.13, 90 A.3d 936 (2014).

Although the question in Wright as to whether the trial court's limitation on cross-examination was of constitutional dimension was not explored in the context of Golding review, the inquiry is effectively the same. See State v. Wright , supra, 322 Conn. at 281, 140 A.3d 939 ; see also State v. Wright , 152 Conn. App. 260, 265, 268-69, 96 A.3d 638 (2014), rev'd on other grounds, 322 Conn. 270, 140 A.3d 939 (2016).

In Luce , the United States Supreme Court observed that in the absence of such testimony, a "reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context." Luce v. United States , supra, 469 U.S. at 41, 105 S.Ct. 460 ; see also id., at 39-40, 105 S.Ct. 460. In emphasizing the "wholly speculative" nature of the harm without such testimony, the Supreme Court observed that an evidentiary ruling is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling. On [the record] here, it would be a matter of conjecture whether the District Court would have allowed the [g]overnment to attack petitioner's credibility at trial by means of the prior conviction. When the defendant does not testify, the reviewing court also has no way of knowing whether the [g]overnment would have sought to impeach with the prior conviction."Id., at 41-42, 105 S.Ct. 460.
This court adopted the rule of Luce in State v. Harrell , 199 Conn. 255, 265-68, 506 A.2d 1041 (1986). Although some courts have more recently eschewed "Luce 's bright-line rule requiring a defendant to testify in order to preserve a claim that a district court improperly ruled that testimony was procured in violation of a defendant's [f]ifth [a]mendment rights," those courts have not, however, "assume[d] that the alleged error must have been harmful in the absence of a record to review. Instead, if a defendant chooses not to testify after the district court finds her statements admissible for impeachment, in order to present a persuasive argument on appeal, that defendant must, by some means, create and present a record in the district court sufficient to permit meaningful appellate review. A defendant who does not wish to testify could, for example, have counsel proffer-or provide affidavits-to create a reviewable record." Met v. State , 388 P.3d 447, 463-64 (Utah 2016) ; accord United States v. Monell , 801 F.3d 34, 49-50 (1st Cir. 2015) (noting previous suggestion, "in dicta," that "a sufficiently definite preview of the defendant's and the government's proposed evidence could provide a verisimilitudinous enactment of an actual context ... such that the district court and appellate court can rule without the disadvantages listed in Luce " [citation omitted; internal quotation marks omitted] ), cert. denied, --- U.S. ----, 136 S.Ct. 864, 193 L.Ed.2d 761 (2016) ; State v. Cherry , 139 Idaho 579, 582, 83 P.3d 123 (App. 2003) (requiring offer of proof in lieu of testimony); Warren v. State , 121 Nev. 886, 894-95, 124 P.3d 522 (2005) (suggesting that extensive offer of proof that would furnish a "sufficient record" to address "problems identified in Luce "); cf. State v. Stanin , 169 N.H. 209, 215-16, 145 A.3d 676 (2016) (requiring testimony but suggesting that detailed proffer might suffice in holding that in absence of "a record of what the defendant would have said during direct examination and of the [s]tate's proposed cross-examination of him," court could not "meaningfully determine whether the trial court's failure to restrict the scope of the [s]tate's cross-examination was unconstitutional"). We acknowledge, however, that some courts reject the rule that there must be an advance offer of proof in lieu of testimony. See, e.g., Commonwealth v. Crouse , 447 Mass. 558, 564-65, 855 N.E.2d 391 (2006) ; State v. Whitehead , 104 N.J. 353, 361-62, 517 A.2d 373 (1986) ; see also Wagner v. State , 347 P.3d 109, 112 n.22 (Alaska 2015) (surveying authorities).
In State v. Perez , 147 Conn. App. 53, 119 n.60, 80 A.3d 103 (2013), aff'd, 322 Conn. 118, 139 A.3d 654 (2016), our Appellate Court rejected the state's reliance on Harrell and Luce in support of its argument that the defendant's failure to testify at trial deprived him of appellate review of his claim that the trial court improperly denied his motion to sever two cases, based on the fact that he wished to testify in a bribery case, but not the joined extortion case. We view Perez as distinguishable from the present case because the record in Perez revealed extensive offers of proof of the defendant's anticipated testimony, thus allowing the trial and reviewing courts a record sufficient to determine the effect of the denial of the motion to sever. See id., 116-19 and nn. 58 and 59.

We note that the recitation of facts in the Appellate Court's opinion may be read to suggest that Olson had taken the photographs personally. See State v. Holley , supra, 160 Conn. App. at 606, 127 A.3d 221. Because we believe that whether Olson's testimony provided a sufficient foundation for his lay opinion testimony, namely, whether he had observed Taylor's injuries personally, was not an issue raised before the trial court in connection with the defendant's objection; see, e.g., State v. Jorge P. , 308 Conn. 740, 753-54, 66 A.3d 869 (2013) ; Practice Book § 67-4 (3) ; in contrast to the dissent, the fact that Olson did not take the photographs personally does not affect our analysis of whether his observations were properly admitted as lay opinion testimony.

The state also contends that any error in admitting Olson's testimony was harmless because it was cumulative of the photographs admitted into evidence.

Section 7-2 of the Connecticut Code of Evidence provides: "A witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue."

Our independent research has revealed numerous cases on point, including United States v. Begay , supra, 42 F.3d at 486, in which the United States Court of Appeals for the Ninth Circuit held that a lay witness could testify about a riot depicted in a video, despite fact that he did not personally witness the riot, because the witness' "perceptions need not be based on the 'live' events ... because he was not testifying to his eyewitness account of those events" and "concerned only the scenes ... extracted from ... the original [video]. Thus, [the witness] need only have perceived the events depicted in [that video]." Id., at 502 ; see also United States v. Torralba-Mendia , 784 F.3d 652, 659 (9th Cir. 2015) ("an officer who has extensively reviewed a video may offer a narration, pointing out particulars that a casual observer might not see"); People v. Gharrett , 403 Ill.Dec. 278, 53 N.E.3d 332, 344 (Ill. App.) (The court concluded that a clerk had properly testified about her perception of an object, namely a bundle of cash and checks, which a surveillance video depicted the defendant taking, despite the fact that she did not personally witness the theft because "[w]hether [her] testimony was rationally based on her perception does not depend on whether [she] had personal knowledge of the actual objects or actions depicted by the video.... [A]ll that is relevant is whether [the clerk's] opinion-that the video depicted a particular object-was the kind of opinion that a layperson could normally draw."), appeal denied, 406 Ill.Dec. 326, 60 N.E.3d 877 (2016) ; Callaway v. State , Docket No. 2376, 2016 WL 7379300, *12 (Md. Spec. App. December 20, 2016) (police officer properly narrated surveillance video, despite fact that he "did not observe the events depicting on the surveillance video as they were unfolding" because "his familiarity with the areas and streets, gleaned from his experience talking to the victim and canvassing the neighborhood, were a solid foundation for him to narrate the footage in a manner that could be considered, by the [trial] court, to be helpful for the jury"); People v. Fomby , 300 Mich. App. 46, 50-51, 831 N.W.2d 887 (2013) (police officer properly provided opinions as to identities of individuals on surveillance video because, although he "was not at the scene while the video footage was being recorded and did not observe firsthand the events depicted [in] the video," his personal knowledge was derived from his "scrutiny of the video surveillance footage and the still images he created from the video"); but see People v. Sykes , 362 Ill.Dec. 239, 972 N.E.2d 1272, 1281 (Ill. App. 2012) (distinguishing Begay on basis of complexity and length of video, concluding that trial court improperly allowed loss prevention officer to narrate because video was "only approximately three minutes in duration" and defendant was "the only person portrayed," and finding that proffered opinion testimony "invaded the province of the jury" because "[t]he only issue the jury needed to determine was whether defendant removed money from the cash register" and officer "was in no better position" to answer that question than jury); Childers v. Commonwealth , 332 S.W.3d 64, 74 (Ky. 2010) (concluding that police detective improperly testified as to his impressions of statement heard on video because "[w]hile a witness is permitted to testify from recollection about events captured on tape, he may not interpret what is on the tape," and noting that detective's testimony "was not from personal recollection" because "he was sitting in a car at a distance and could not hear firsthand what [was] said"), overruled in part on other grounds by Allen v. Commonwealth , 395 S.W.3d 451 (Ky. 2013) ; State v. Buie , 194 N.C. App. 725, 733, 671 S.E.2d 351 (trial court improperly allowed narration that "was not based on any first-hand knowledge or perception by the officer, but rather solely on the detective's viewing of the surveillance video"), appeal dismissed, 363 N.C. 375, 679 S.E.2d 136 (2009).

We note that, because the Appellate Court addressed the defendant's evidentiary claims in the context of issues likely to arise on remand, it did not consider whether any of the evidentiary rulings constituted harmless error. See State v. Holley , supra, 160 Conn. App. at 614, 127 A.3d 221.

During the final charge, the trial court instructed the jury as follows: "Some testimony and exhibits have been admitted for limited purposes. When I have given a limiting instruction you must follow it. For example ... Smola supplied a narration concerning alleged events on the bus video. It is for you, the jury, to decide if those events did occur and if so the identity of the individuals in that video."

On January 27, 2016, we denied the state's motion to strike the defendant's statement of alternative grounds filed pursuant to Practice Book § 84-11 (a), although we granted the state's motion to strike the defendant's statement of adverse rulings, namely, a challenge to the sufficiency of the evidence. See footnote 4 of this opinion.

We note that the defendant concedes that the trial court properly determined that Parker's testimony was not inadmissible hearsay.

The Appellate Court did not reach this issue, deeming it unlikely to arise on retrial. See State v. Holley , supra, 160 Conn. App. at 636-37, 127 A.3d 221.

With respect to further colloquy on this point, we note that defense counsel stated that, "[a]t the probable cause [hearing, Smola] testified that he could not indicate [if] that item came from [the victim's] apartment; he testified under oath then.
"The Court: The testimony here is he could. So you can impeach him about it, but the testimony here is that he could. There's nothing I can do about his testimony. You asked if he could testify to any degree of certainty, yes, he could .... Taylor told him so. It was responsive.
"[Defense Counsel]: That's not responsive, Your Honor.
"The Court: That is responsive, Counsel. You asked repeatedly if he could testify."
After the state argued that Smola's testimony was indeed responsive, defense counsel argued as follows: "Your Honor, I asked him could you-first, I asked that, and then I changed the question: Can you testify that that thing came from the apartment?
"That's what I said. That calls [for]-
"The Court: No. Then you asked could you testify with any degree of certainty and ... he answered .... You're stuck with the response, Counsel. You certainly can impeach him with the probable cause testimony, but apparently you were aware that that would have been his testimony, that he knew from ... Taylor.
"[Defense Counsel]: Your Honor ... he didn't even interview Taylor. "The Court: But he said he knew from ... Taylor. He didn't say he interviewed him; he said he knew from ... Taylor.
"[Defense Counsel]: My question called for a yes or no answer, Your Honor. It was nonresponsive ....
"The Court: It was very responsive, Counsel, he just elaborated on the yes or no, is the difficulty.
"[Defense Counsel]: So, Your Honor, if I impeach him now, is the witness going to be allowed to talk about ... Taylor's confession?
"The Court: Counsel, I'm not going to tell you how to conduct your cross-examination."

We note that the defendant has briefed this claim in the context of the open door doctrine, under which "a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject.... The party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party. Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it [when] the party initiating inquiry has made unfair use of the evidence.... [T]his rule operates to prevent a defendant from successfully excluding inadmissible prosecution evidence and then selectively introducing pieces of this evidence for his own advantage, without allowing the prosecution to place the evidence in its proper context." (Internal quotation marks omitted.) State v. Payne , 303 Conn. 538, 557, 34 A.3d 370 (2012). We disagree with the defendant's reliance on this doctrine, insofar as the record indicates that he did not seek to introduce evidence otherwise barred under Crawford for his own limited purposes. Rather, we agree with the framework posited by the state pursuant to State v. Brokaw , supra, 183 Conn. at 33, 438 A.2d 815, under which the question is whether the trial court reasonably could have exercised its discretion to determine that Smola's answer was a fair response to the question posed by defense counsel.

Our research indicates that previous Connecticut case law applying this principle does not provide significant guidance, insofar as it considered witness responses to open-ended, nonleading questions on cross-examination. See State v. Brokaw , supra, 183 Conn. at 32, 438 A.2d 815 ("[h]aving invited the witness to explain 'how it was' that he felt the situation was dangerous, the defendant cannot now complain that the response, to the extent it was offered for the truth of the matter asserted, consisted of hearsay"); State v. Pecciulis , supra, 84 Conn. at 163, 79 A. 75 (rejecting challenge to answer to cross-examination question, " '[w]hat did he say' "); State v. Polanco , 26 Conn. App. 33, 36, 597 A.2d 830 (concluding that "[o]pen ended question," namely, " 'what flagged your memory yesterday that you could talk about the ones you talked about yesterday that you didn't tell the police on October 5, 1988,' " invited detective's reference to defendant's earlier trial"), cert. denied, 220 Conn. 926, 598 A.2d 367 (1991) ; cf. State v. Smith , supra, 212 Conn. at 609-11, 563 A.2d 671 (witness' description of last court proceeding as " 'trial' " was invited by impeachment questions focusing on her prior testimony at " 'another hearing' " or " 'prior hearing' ").

But see Fulton v. State , 278 Ga. 58, 61-62 and n.2, 597 S.E.2d 396 (2004) (answer indicating that witness had previously "called police to report appellant had pointed a gun at her" was unresponsive to question asking whether police knew who they were looking for when they came to witness' house weeks later); Maisto v. Maisto , supra, 123 N.J.L. at 404, 8 A.2d 810 (trial court did not abuse its discretion in sustaining objection to partial answer beginning with the words " '[i]t was because the place,' " as that answer was "undeniably irresponsive" to question asking whether witness recalled his son "being on a truck" with plaintiff in connection with work for family baking business).

In light of this conclusion, we need not address the state's contention that any error in declining to strike Smola's testimony was harmless.

The defendant challenged this ruling on appeal to the Appellate Court, which concluded that this conditional Crawford ruling violated the defendant's right to present a defense. State v. Holley , supra, 160 Conn. App. at 611-14, 127 A.3d 221. The majority does not directly address the propriety of the trial court's conditional ruling, but, rather, concludes that the defendant cannot establish a violation to his constitutional right to present a defense because he did not demonstrate what admissible evidence or argument, if any, that the court's conditional ruling prevented him from offering. My conclusion that the trial court improperly admitted certain evidence as lay testimony renders it unnecessary for me to reach that issue, although I note my concern that, irrespective of whether the trial court's ruling violated the defendant's right to present a defense, such a conditional ruling does not appear to have been proper under Crawford.

Because the federal rule of evidence governing opinion testimony by a lay witness is sufficiently similar to § 7-1 of the Connecticut Code of Evidence, federal case law may assist our analysis. Jacobs v. General Electric Co. , supra, 275 Conn. at 407, 880 A.2d 151.

Because Olson had not taken the photographs, the trial court could not infer from the existence of the photographs alone that Olson might have observed the marks closely enough when photographing them to form an opinion about their cause.

As a result of this exchange, the defendant's counsel immediately moved for a mistrial, arguing that the state had violated the trial court's Crawford ruling, and counsel asked to heard outside of the jury's presence. The trial court denied the motion and the request. Like the Appellate Court, I do not reach the defendant's alternative claim on appeal that the trial court should have granted the motion for a mistrial. Nevertheless, it is impossible to overlook that excluding the evidence barred by Crawford (i.e., Taylor's hearsay statements) was fundamental to a fair trial. As evidenced by the Appellate Court's decision, and the majority's decision not to address its merits head on, the trial court's conditional Crawford ruling was highly questionable-another issue I do not reach. See footnote 1 of this opinion. Whatever the merits of the trial court's conditional Crawford ruling, however, the state almost immediately violated it, eliciting testimony the trial court had expressly barred. Under those circumstances, granting the motion for a mistrial would have been defensible.